[No. B157850. Second Dist., Div. Five. Sept. 30, 2002.]

COUNTY OF LOS ANGELES, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
TERRELL R., Real Party in Interest.

628

## COUNSEL

Schuler & Kessel, Elizabeth M. Kessel and Linda Diane Anderson for Petitioner.

No appearance for Respondent.

Voorhies & Kramer, Richard C. Voorhies, R. Brian Kramer; and Linda Wallace Pate for Real Party in Interest.

## OPINION

**GRIGNON, J.**—Defendant County of Los Angeles (County) petitions for a writ of mandate ordering respondent court to grant its motion for summary judgment of the action brought against it by real party in interest Terrell R. This case arises out of Terrell's dependency placement in a foster family home in which he was sexually molested. He alleged the County breached mandatory duties causing his injuries. We conclude no triable issue of fact exists as to the breach of any mandatory duty by the County causing Terrell injury. He further alleged the County was responsible under the doctrine of respondeat superior for the negligence of its social worker. We conclude the social worker and the County are immune for the discretionary acts of the social worker in placing and supervising Terrell. Accordingly, we grant the petition and order respondent court to grant the motion for summary judgment and enter judgment in favor of the County.

FACTS AND PROCEDURAL BACKGROUND[1]

*Facts*

Terrell was born in April 1988. Terrell and his four siblings were declared dependents of the court and removed from the custody of their mother in

---

[1]This appeal is from a summary judgment. The relevant facts are largely undisputed. To the extent conflicting evidence exists, we state the facts in the light most favorable to the party opposing the summary judgment motion, i.e., Terrell.

November 1996. The children were placed with the maternal grandmother and her husband. In January 1999, the maternal grandmother was appointed guardian of the children. In early March 1999, the County Department of Children and Family Services detained the children and removed them from their maternal grandmother's custody due to her failure to provide for them and her abuse of prescription drugs. The children were permitted to remain in the home with the maternal grandmother's husband, provided the maternal grandmother did not live in the home.

On March 8, 1999, Robert Poole contacted the County social worker assigned to the children. Robert Poole told the County social worker he was a family friend interested in becoming a caregiver for the children and asked about the procedure. The County social worker advised Robert Poole to contact a state licensed foster family agency to inquire about becoming a certified foster parent. Robert Poole contacted Wings of Refuge, a state licensed foster family agency, and began attending Model Approach for Partnership in Parenting (MAPP) classes.

On March 31, 1999, the maternal grandmother returned to the home. An immediate and temporary placement for the five children was required.

By April 1, 1999, Wings of Refuge had certified Robert Poole as a foster parent. He did not have a criminal record. However, a child abuse index clearance, the results of a TB test, and verification of employment had not been completed prior to the certification of Robert Poole as a foster parent. Satisfactory responses were obtained only thereafter. Prior to certification, Robert Poole had not completed the 30 hours of MAPP classes required by Wings of Refuge's license with the state; he had completed only 15 hours. The County social worker was aware of this fact. In March 1999, no state regulation required the completion of training prior to certification of an individual as a foster parent. Subsequently, a regulation was adopted requiring 12 hours of training prior to certification. (Cal. Code Regs., tit. 22, § 89405.) However, the program statement filed by Wings of Refuge with the state indicated an individual certified by Wings of Refuge as a foster parent would have completed 30 hours of MAPP training.

At the time Robert Poole was certified as a foster parent, he was living with his mother, Monica Poole, in a three-bedroom house in Inglewood. Wings of Refuge inspected the Poole residence, completed a home study, and certified the residence as a foster family home. The Poole residence was certified by Wings of Refuge to take only one of the children until Robert Poole could obtain a larger home. Terrell was placed with Robert Poole. As of May 5, 1999, his four siblings were placed together in a different foster

family home; the siblings' foster parent was working towards qualifying to take Terrell as a fifth child. No relatives were currently available for placement, although a maternal aunt was interested if she could obtain a larger residence. Other relatives were also contacted.

On April 5, 1999, the dependency court ordered the children detained and removed from the custody of the maternal grandmother. On June 9, 1999, the allegations of a supplemental petition against the maternal grandmother were sustained.

The County social worker met with all five children and Robert Poole at the offices of Wings of Refuge on April 1, 1999, and at the siblings' foster family home on May 25 and June 10, 1999. This satisfied the County's mandatory duty to conduct face-to-face visits each calendar month under the state Department of Social Services Manual of Policies and Procedures (DSS Manual) regulation 31-320.41.

A Wings of Refuge social worker visited Terrell in the Poole home on April 1, April 27, May 6, May 18, June 8, June 15, and June 22, 1999. Terrell had his own bedroom.

Terrell had been sleeping in the same bed as Robert Poole since the beginning of his placement in the Poole home. Terrell was sexually abused by Robert Poole between April 1 and June 30, 1999. The Wings of Refuge social worker first received information of the bed sharing and possible sexual abuse of Terrell by Robert Poole on June 28, 1999. The Wings of Refuge social worker called the child abuse hotline on June 29, 1999. Terrell was removed from the Poole home on that same date. The County social worker did not know until July 5, 1999, that Terrell was sleeping in the same bed as Robert Poole or that Robert Poole was sexually molesting Terrell.

Criminal charges were filed against Robert Poole for the sexual molestation of Terrell. Robert Poole was acquitted.

*Allegations of the Complaint*

On August 23, 2000, Terrell sued Robert Poole, Monica Poole, the County, and Wings of Refuge. The complaint alleged causes of action against the County for violation of mandatory statutory duties (Gov. Code, § 815.6) and negligence, arising out of the County's placement of Terrell in the Poole home and supervision of Terrell thereafter. Specifically, the complaint listed various statutes and regulations alleged to have created mandatory duties on the part of the County, which the County had breached

in its placement and supervision of Terrell. Terrell's action for negligence against the County stated facts alleging both direct liability and vicarious liability for the actions of its unnamed employees under the doctrine of respondeat superior.

Terrell also sued Wings of Refuge for negligence; Robert Poole for negligence, assault and battery, and intentional infliction of emotional distress; Dependency Court Legal Services for legal malpractice; and Monica Poole for negligence.

*County's Motion for Summary Judgment*

The County moved for summary judgment on the grounds it was immune from suit unless it breached a mandatory statutory duty, it breached no mandatory statutory duty owed to Terrell, and any breach did not cause Terrell damage.[2] The County also moved for summary judgment on the ground that any negligence of its employees had been the result of the exercise of discretion and therefore the County was also immune from suit on this basis. Terrell opposed the motion. The County replied to the opposition.

*November 2, 2001 Hearing*

The hearing on the summary judgment motion was scheduled for November 2, 2001. On that date, the trial court requested that the parties pinpoint the precise mandatory duties that the County had allegedly violated. The hearing was continued to March 21, 2002.

*March 21, 2002 Hearing*

Plaintiff identified the following statutes and regulations assertedly giving rise to a mandatory duty on the part of the County: Family Code section 7950, subdivision (a)(1); Welfare and Institutions Code sections 16501, subdivision (c), 16501.1, subdivision (c), 16000, and 16002, subdivision (b); and DSS Manual regulations 31-301.21, 31-405.1(j), 31-420.1, and 31-420.2. Respondent court concluded a triable issue of fact existed as to

---

[2]Respondent court did not rule on Terrell's objections to the County's evidence. Accordingly, those objections have been waived. (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 670, fn. 1 [25 Cal.Rptr.2d 137, 863 P.2d 207].) Moreover, to the extent the objections are raised on appeal, they are not supported by adequate citations to the record or statutory or case authority. (*Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [21 Cal.Rptr.2d 834].) In addition, to the extent the evidence consisted of an expert opinion, neither this court nor the trial court relied on the expert opinion. Finally, the County's evidence consisted primarily of admissible records from the dependency court proceedings. We note that these records were attached by Terrell to the deposition of the County social worker submitted to the trial court.

whether the County social worker knew that 30 hours of MAPP classes were required prior to certification of a foster parent and knew Robert Poole had completed only 15 hours. From this, respondent court inferred the County social worker might have known that the certification of Robert Poole as a foster parent by Wings of Refuge was a sham. The County social worker had a ministerial duty to place Terrell in a certified foster family home and thus under the doctrine of respondeat superior, the County was liable for the breach of that ministerial duty. Respondent court denied the County's motion for summary judgment. This timely petition followed.

DISCUSSION

*Standard of Review*

■ We review orders granting or denying a summary judgment motion de novo. (*FSR Brokerage, Inc. v. Superior Court* (1995) 35 Cal.App.4th 69, 72 [41 Cal.Rptr.2d 404]; *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 580-581 [37 Cal.Rptr.2d 653].) We exercise "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222 [38 Cal.Rptr.2d 35].) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

*Immunity of County*

■ "In California, all government tort liability must be based on statute. Government Code section 815 provides: 'Except as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.' (Gov. Code, § 815, subd. (a).) . . . [T]his section ' "abolished all common law or judicially declared forms of liability for public entities, except for such liability as may be required by the federal or state Constitution. Thus, in the absence of some constitutional requirement, public entities may be liable *only* if a statute declares them to be liable." ' " (*Becerra v. County of Santa Cruz* (1998) 68 Cal.App.4th 1450, 1457 [81 Cal.Rptr.2d 165].)

*Mandatory Duty—Direct Liability*

A public entity may be directly liable for failure to discharge a mandatory duty. (Gov. Code, § 815.6.) Government Code 815.6 provides: "Where a

public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

■ "The term 'enactment' as used in Government Code section 815.6 means 'a constitutional provision, statute, charter provision, ordinance or regulation.' (Gov. Code, § 810.6.) 'This definition is intended to refer to all measures of a formal legislative or quasi-legislative nature.' [Citation.] The term 'regulation,' as used in Government Code section 810.6 means 'a rule, regulation, order or standard, having the force of law, adopted . . . as a regulation by an agency of the state pursuant to the Administrative Procedure Act [Act].' [Citation.] [¶] 'The . . . Act rulemaking provisions apply to *most state agencies* and their regulations. [Citations.] There are significant exceptions, however, both as to the agencies and types of regulations covered. [Citation.]' [Citations.] For instance, the Act does not apply to '[a] regulation that relates only to the internal management of the state agency' or '[a] regulation that is directed to a specifically named person or to a group of persons and does not apply generally throughout the state.' " (*Wilson v. County of San Diego* (2001) 91 Cal.App.4th 974, 982 [111 Cal.Rptr.2d 173].) An employee manual of a county-operated juvenile dependency facility is not an enactment that imposes a mandatory duty on county employees. (*Ibid.*)

■ "One of the essential elements that must be pled is the existence of a specific statutory duty. [Citation.] 'Duty cannot be alleged simply by stating "defendant had a duty under the law"; that is a conclusion of law, not an allegation of fact. The facts showing the existence of the claimed duty must be alleged. [Citation.] Since the duty of a governmental agency can only be created by statute or "enactment," the statute or "enactment" claimed to establish the duty must at the very least be identified.' [Citation.] Therefore, a ' ". . . litigant seeking to plead the breach of a mandatory duty must specifically allege the applicable statute or regulation." ' [Citation.] 'Unless the applicable enactment is alleged in specific terms, a court cannot determine whether the enactment relied upon was intended to impose an obligatory duty to take official action to prevent foreseeable injuries or whether it was merely advisory in character.' " (*Becerra v. County of Santa Cruz, supra,* 68 Cal.App.4th at p. 1458.)

■ " 'Government Code [section] 815.6 contains a three-pronged test for determining whether liability may be imposed on a public entity: (1) an enactment must impose a mandatory, not discretionary, duty . . . ; (2) the

enactment must intend to protect against the kind of risk of injury suffered by the party asserting section 815.6 as a basis for liability . . . ; and (3) breach of the mandatory duty must be a proximate cause of the injury suffered.' [Citation.] Whether an enactment is intended to impose a mandatory duty is a question of law for the court." (*Becerra v. County of Santa Cruz, supra,* 68 Cal.App.4th at p. 1458.)

As our Supreme Court has explained, "First and foremost, application of [Government Code] section 815.6 requires that the enactment at issue be *obligatory*, rather than merely discretionary or permissive, in its directions to the public entity; it must *require*, rather than merely authorize or permit, that a particular action be taken or not taken. [Citation.] It is not enough, moreover, that the public entity or officer have been under an obligation to perform a function if the function itself involves the exercise of discretion." (*Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 498 [93 Cal.Rptr.2d 327, 993 P.2d 983].)

"Second, but equally important, [Government Code] section 815.6 requires that the mandatory duty be 'designed' to protect against the particular kind of injury the plaintiff suffered. The plaintiff must show the injury is ' "one of the consequences which the [enacting body] sought to prevent through imposing the alleged mandatory duty." ' [Citation.] Our inquiry in this regard goes to the legislative *purpose* of imposing the duty. That the enactment 'confers some benefit' on the class to which plaintiff belongs is not enough; if the benefit is 'incidental' to the enactment's protective purpose, the enactment cannot serve as a predicate for liability under [Government Code] section 815.6." (*Haggis v. City of Los Angeles, supra,* 22 Cal.4th at p. 499.)

An enactment creates a mandatory duty if it requires a public agency to take a particular action. (*Wilson v. County of San Diego, supra,* 91 Cal.App.4th at p. 980.) An enactment does not create a mandatory duty if it merely recites legislative goals and policies that must be implemented through a public agency's exercise of discretion. (*Ibid.*) The use of the word "shall" in an enactment does not necessarily create a mandatory duty. (*Morris v. County of Marin* (1977) 18 Cal.3d 901, 910-911, fn. 6 [136 Cal.Rptr. 251, 559 P.2d 606]; *Wilson v. County of San Diego, supra,* 91 Cal.App.4th at p. 980.)

*Statutes and Regulations*

Terrell claims the following statutes and regulations create mandatory duties on the part of the County.

1. *Relative and sibling placement.*

Terrell argues Family Code section 7950, subdivision (a)(1), Welfare and Institutions Code sections 16501.1, subdivision (c), 16000, 16002, subdivision (b), and DSS Manual regulation 31-420.2 require that a foster child be placed with a relative and siblings. We address each of these enactments.

A. Family Code section 7950, subdivision (a)(1) provides: "With full consideration for the proximity of the natural parents to the placement so as to facilitate visitation and family reunification, when a placement in foster care is being made, the following considerations shall be used: [¶] . . . Placement shall, if possible, be made in the home of a relative, unless the placement would not be in the best interest of the child. Diligent efforts shall be made to locate an appropriate relative. Before any child may be placed in long-term foster care, each relative whose name has been submitted to the agency as a possible caretaker, either by himself or herself or by other persons, shall be evaluated as an appropriate placement resource."

Family Code section 7950 "concerns priorities for foster care placement." (*Becerra v. County of Santa Cruz, supra,* 68 Cal.App.4th at p. 1459.) This legislative preference for placement in the home of a relative is merely a legislative goal or policy that must be implemented by the County in the exercise of its judgment as to an appropriate foster care placement; it does not create a mandatory duty. (*Wilson v. County of San Diego, supra,* 91 Cal.App.4th at p. 980.) Foster care placement is a governmental function that involves the exercise of discretion. In addition, the purpose of the statute is to preserve the family relationship, not to prevent sexual abuse. Moreover, the evidence is undisputed that no relatives of Terrell were available for placement.

B. Welfare and Institutions Code section 16501.1, subdivision (c) provides: "When out-of-home placement is used to attain case plan goals, the decision regarding choice of placement shall be based upon selection of a safe setting that is the least restrictive or most family-like and the most appropriate setting that is available and in close proximity to the parent's home, consistent with the selection of the environment best suited to meet the child's special needs and best interest, or both. The selection shall consider, in order of priority, placement with relatives, tribal members, and foster family, group care, and residential treatment pursuant to Section 7950 of the Family Code."

"[Welfare and Institutions Code s]ection 16501.1 requires [Child Protective Services] social workers to analyze the selection criteria prior to placement of the child. The statute does not, however, specify the ultimate

placement that must be made, or dictate that any one factor is controlling. Although the statute provides a general policy statement by which social workers are to be guided, it does not require a particular result, or specify the 'special needs' or 'best interests' of the child. These factors, sometimes difficult and subjective, are left to the judgment of the social worker placing the child. [¶] . . . [T]o the extent that there is a 'mandatory duty' imposed upon the County by Welfare and Institutions Code section 16501.1, subdivision (c), it is to evaluate the stated criteria prior to making a placement selection." (*Becerra v. County of Santa Cruz, supra,* 68 Cal.App.4th at pp. 1459-1460.) Welfare and Institutions Code section 16501.1, subdivision (c) is, like Family Code section 7950, concerned with priorities for discretionary foster care placement; it creates no mandatory duties. (*Becerra,* at p. 1459.) Similarly, it does not have a purpose to prevent sexual abuse and no relatives were available for placement.

C. Welfare and Institutions Code section 16000 provides: "It is the intent of the Legislature to preserve and strengthen a child's family ties whenever possible, removing the child from the custody of his or her parents only when necessary for his or her welfare or for the safety and protection of the public. In any case in which a child is removed from the physical custody of his or her parents, preferential consideration shall be given whenever possible to the placement of the child with the relative as required by Section 7950 of the Family Code. When the child is removed from his or her own family, it is the purpose of this chapter to secure as nearly as possible for the child the custody, care, and discipline equivalent to that which should have been given to the child by his or her parents. It is further the intent of the Legislature to reaffirm its commitment to children who are in out-of-home placement to live in the least restrictive, most family-like setting and to live as close to the child's family as possible pursuant to subdivision (c) of Section 16501.1. Family reunification services shall be provided for expeditious reunification of the child with his or her family, as required by law. If reunification is not possible or likely, a permanent alternative shall be developed."

Welfare and Institutions Code section 16000 is another statute setting forth legislative priorities for discretionary foster care placement; it creates no mandatory duties. (*Becerra v. County of Santa Cruz, supra,* 68 Cal.App.4th at p. 1459.) Similarly, its purpose is not to prevent sexual abuse and no relatives were available for placement.

D. Welfare and Institutions Code section 16002, subdivision (b) provides: "The responsible local agency shall make a diligent effort in all out-of-home placements of dependent children, including those with relatives, to develop and maintain sibling relationships. If siblings are not placed

together in the same home, the social worker shall explain why the siblings are not placed together and what efforts he or she is making to place the siblings together or why those efforts are not appropriate. When placement of siblings together in the same home is not possible, diligent effort shall be made, and a case plan prepared, to provide for ongoing and frequent interaction among siblings until family reunification is achieved, or, if parental rights are terminated, as part of developing the permanent plan for the child. If the court determines by clear and convincing evidence that sibling interaction is detrimental to a child or children, the reasons for the determination shall be noted in the court order, and interaction shall be suspended."

As with relative placement, placement with siblings is a legislative goal that does not create a mandatory duty. It is a factor to be considered in making the discretionary foster care placement. Moreover, its purpose is to preserve familial relationships and not to prevent sexual abuse. Further, the evidence is undisputed that a placement for all five siblings was not available at the time.

E. DSS Manual regulation 31-420.2 provides in relevant part: "When selecting a foster care placement for the child, the social worker shall adhere to the following priority order: [¶] .21 The home of a relative, including the non-custodial parent, in which the child can be safely placed as assessed according, but not limited to, the requirements specified in Welfare and Institutions Code [s]ection 361.3. [¶] .211 Preferential consideration for placement of the child shall be given to a non-custodial parent, then an adult who is a grandparent, aunt, uncle or sibling of the child. [¶] . . . [¶] .22 A licensed foster family home, licensed small family home, or a licensed foster family agency for placement in a family home which has been certified by the foster family agency."

Once again, this regulation establishes priorities for discretionary foster care placement. It creates no mandatory duties. Its purpose is not to prevent sexual abuse.

2. *Appropriate placement and supervision.*

■ Terrell argues that DSS Manual regulations 31-405.1(j) and 31-420.1 require the County to place a foster child in an appropriate environment and monitor the child's condition. We address these two regulations.

A. DSS Manual regulation 31-405.1(j) provides: "When arranging for a child's placement the social worker shall: [¶] . . . [¶] Monitor the child's

physical and emotional condition, and take necessary actions to safeguard the child's growth and development while in placement." This regulation sets forth general policy goals for the social worker, but does not specifically direct the manner in which the goals will be attained. It creates no mandatory duty. (Cf. *Scott v. County of Los Angeles* (1994) 27 Cal.App.4th 125, 142 [32 Cal.Rptr.2d 643] [DSS regulation requiring monthly visits creates a mandatory duty].) Placement and supervision are functions involving the exercise of discretion. A county is not the insurer of a child's physical and emotional condition, growth and development while in foster care placement. (*Jordy v. County of Humboldt* (1992) 11 Cal.App.4th 735, 741 [14 Cal.Rptr.2d 553].)

B. DSS Manual regulation 31-420.1 provides in relevant part: "The foster care placement shall be based on the following needs of the child including, but not limited to: [¶] .11 The least restrictive, most family-like environment. [¶] . . . [¶] .14 Capability of the foster parent(s) to meet specific needs of the child. [¶] . . . [¶] .19 The most appropriate placement selection." This regulation is also a general policy statement and creates no mandatory duty. Its purpose is not to prevent sexual abuse.

3. *Other enactments.*

Terrell has also pointed to Welfare and Institutions Code section 16501, subdivision (c)[3] and DSS Manual regulation 31-3012.21[4] as sources of mandatory duties. However, Terrell has failed to set forth the breach of any mandatory duty created by this statute or regulation, and we are unable to discern a mandatory duty.

*Derivative Liability*

A public entity may be derivatively liable under certain circumstances for acts or omissions of employees. (Gov. Code, § 815.2.) Government Code section 815.2 provides: "(a) A public entity is liable for injury proximately

[3] Welfare and Institutions Code section 16501, subdivision (c) provides: "The county shall provide child welfare services as needed pursuant to an approved service plan and in accordance with regulations promulgated, in consultation with the counties, by the department. Counties may contract for service-funded activities as defined in paragraph (1) of subdivision (a). Each county shall use available private child welfare resources prior to developing new county-operated resources when the private child welfare resources are of at least equal quality and lesser or equal cost as compared with county-operated resources. Counties shall not contract for needs assessment, client eligibility determination, or any other activity as specified by regulations of the State Department of Social Services, except as specifically authorized in Section 16100."

[4] DSS Manual regulation 31-3012.21 provides: "Counties shall not contract for case management services and any activities which are mandated by the Division 31 regulations to be performed by the social worker."

caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative. [¶] (b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

■ "[Government Code s]ection 815.2 thus imposes upon public entities vicarious liability for the tortious acts and omissions of their employees, and makes it clear that in the absence of statute a public entity cannot be held liable for an employee's act or omission where the employee himself or herself would be immune." (*Becerra v. County of Santa Cruz, supra,* 68 Cal.App.4th at p. 1461.) "Identification of a specific employee tortfeasor is not essential to County liability under [Government Code] section 815.2." (*Id.* at p. 1462, fn. 5.)

■ Government Code section 820.2 provides: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." "[T]he determination to place a child in a particular foster [family] home is . . . immune from liability pursuant to Government Code section 820.2." (*Becerra v. County of Santa Cruz, supra,* 68 Cal.App.4th at p. 1462.) "[T]he choice of a foster [family] home for a dependent child is a complex task requiring the consideration and balancing of many factors to achieve statutory objectives." (*Id.* at p. 1464.) " 'Selecting and certifying a foster [family] home for care of dependent children seems to us to be an activity loaded with subjective determinations and fraught with major possibilities of an erroneous decision. It appears to us that foster [family] home placement . . . constitutes an activity of a co-equal branch of government, and that the discretionary decisions made in connection therewith should be deemed beyond the proper scope of court review.' " (*Ibid.*) A county social worker is immune from liability for negligent supervision of a foster child unless the social worker fails to provide specific services mandated by statute or regulation. (*Id.* at pp. 1465-1466; *Scott v. County of Los Angeles, supra,* 27 Cal.App.4th at p. 142.)[5]

---

[5]*Elton v. County of Orange* (1970) 3 Cal.App.3d 1053 [84 Cal.Rptr. 27], upon which Terrell relies, is not controlling authority in this case for three reasons. First, the appeal in *Elton* followed a demurrer, not a summary judgment. Second, *Elton* was decided prior to the adoption of statutes mandating the exercise of discretion by social workers. Third, the *Elton* court (*Ronald S. v. County of San Diego* (1993) 16 Cal.App.4th 887, 898 [20 Cal.Rptr.2d 418])

*Supervision*

 Terrell alleged the County social worker failed to adequately supervise him. He argues the County social worker saw him face-to-face only once per calendar month and never visited him in his foster family home. The evidence is undisputed that the County social worker complied with the visitation schedule mandated by the regulations. In addition, Terrell was placed with a licensed foster family agency; a social worker from that agency visited Terrell in his foster family home two or three times a month. The foster family agency social worker reported that Terrell had his own bedroom. Terrell never disclosed to either the County or the foster family agency social workers, during these visits, the improprieties or sexual abuse that took place commencing on April 1, 1999, the first day of his foster placement in the Poole residence. Terrell appeared to the social workers to be content in a stable placement. The appropriate degree of supervision of a foster parent, in excess of the visitation schedule mandated by statute or regulation, is a uniquely discretionary activity for which the County social worker and the County are immune.

*Placement with Certified Foster Parent*

 A certified foster parent is an individual certified by a state-licensed foster family agency. The social worker may place a child with a licensed foster family agency for placement in a foster family home that has been certified by the foster family agency as meetings its standards. (Welf. & Inst. Code, § 361.2, subd. (e)(6); DSS Manual reg. 31-420.22.) Wings of Refuge is licensed by the state as a foster family agency. Prior to April 1, 1999, Wings of Refuge certified Robert Poole as a foster parent. The program statement of Wings of Refuge provides: "Wings of Refuge uses the M.A.P.P. (Model Approach for Partnership in Parenting) model for training, and require[s] potential Certified Parents to complete 30 hours of pre-certification training." The program statement is prepared by the foster family agency and submitted to the DSS, Community Care Licensing Division as part of its requisite plan of operation. (Cal. Code Regs., tit. 22, § 88022.) The program statement is required by DSS Manual regulations and is considered part of the license of the foster family agency. The foster family agency is required to operate within the terms specified in the plan of operation. (*Ibid.*) The program statement is also submitted to the County and becomes a contract between the County and the foster family agency. Robert Poole had completed only 15 hours of MAPP training prior to his certification. The County social worker was aware of this fact.

---

later severely limited the holding of *Elton* and described the decision as "difficult." (*Becerra v. County of Santa Cruz, supra,* 68 Cal.App.4th at p. 1464.)

The County social worker had a ministerial duty to place Terrell with a licensed foster family agency for placement in a certified foster family home. Wings of Refuge is a licensed foster family agency, and Wings of Refuge certified the Poole residence as a foster family home. The County social worker placed Terrell with Wings of Refuge for placement in the Poole residence. Thus, the County social worker complied with her ministerial duty. It was the duty of Wings of Refuge to certify the Poole residence as a foster family home in compliance with its license with the state and its contract with the County. It is true that the state license and the County contract of Wings of Refuge required 30 hours of MAPP training prior to certification of a foster family home by Wings of Refuge. It is also true that in the case of Robert Poole, Wings of Refuge relaxed the requirement by permitting Robert Poole to complete 15 hours of MAPP training prior to certification and the remainder after certification. The evidence is undisputed that the reason for the relaxation was to expedite the certification of the Poole residence in order to facilitate the placement of Terrell with a family friend. There is no evidence of any improper purpose or motivation. The knowledge of the County social worker of the relaxation of the MAPP training requirements under these circumstances cannot reasonably be construed as knowledge that the certification was a "sham."

## DISPOSITION

The petition for writ of mandate is granted. Respondent court is ordered to vacate its decision denying the motion of the County of Los Angeles for summary judgment, enter a new and different order granting the motion, and enter judgment in favor of the County of Los Angeles. The parties are to bear their own costs in these writ proceedings.

Turner, P. J., and Armstrong, J., concurred.

A petition for a rehearing was denied October 18, 2002, and the petition of real party in interest for review by the Supreme Court was denied December 18, 2002. Kennard, J., and Moreno, J., were of the opinion that the petition should be granted.