[No. D050159. Fourth Dist., Div. One. July 26, 2007.]

DEPARTMENT OF CORPORATIONS, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
MERLE LADNER ADAMS et al., Real Parties in Interest.

**COUNSEL**

Edmund G. Brown, Jr., Attorney General, Felix E. Leatherwood, Jeffrey A. Rich, Donna M. Dean, Domini Pham and Joel A. Davis, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Patricia A. Meyer & Associates, Patricia A. Meyer, Marisa Janine-Page and Michele M. Mosby for Real Parties in Interest.

**OPINION**

**IRION, J.**—The instant petition for a writ of mandate presents the question of whether the California Department of Corporations (the DOC) may be held liable for investment losses suffered by investors who purchased fraudulent securities from brokers subject to "desist and refrain orders" after those orders were rescinded by the DOC. The real parties in interest contend that

under Government Code section 815.6, which creates a private right of action against public entities that fail to discharge a "mandatory duty," the DOC may be held liable for such losses because the DOC violated Corporations Code[1] section 25612's command not to rescind any order without first finding "that the action is necessary or appropriate in the public interest or for the protection of investors and consistent with the purposes fairly intended by the policy and provisions of this law [the Corporate Securities Law of 1968]." (§ 25612.) We disagree.

As explained below, when viewed in context, section 25612 is discretionary and does not create any mandatory duty under Government Code section 815.6. In addition, it is clear that the Legislature intended that violations of section 25612 would not give rise to any private right of action, and permitting the instant lawsuit to go forward would frustrate legislative intent. Thus, while the investors' losses are indeed tragic, we conclude the instant claim *against the DOC* for redress of those losses fails as a matter of law. Consequently, we grant the petition.

I

FACTS[2]

On February 15, 2006, the real parties in interest, 44 investors (the investors), sued the DOC for $7.72 million in investment losses sustained when they purchased valueless securities in a "Ponzi" scheme perpetrated by Daniel William Heath, Heath and Associates, Inc., Larry J. Schlarmann, and Schlarmann and Associates, Inc. The investors bought the securities based on the promise that the investments were safer than stocks and bonds and would guarantee 5.5 to 10 percent annual returns.

On March 30, 1998, the DOC issued a desist and refrain order against Schlarmann and his related business entities (the Schlarmann entities), and a separate but substantially similar order against Heath and his related business entities (the Heath entities). The orders stated: "Pursuant to Section 25532 of the California Corporate Securities Law of 1968, you are hereby ordered to desist and refrain from the further offer or sale in the State of California of securities . . . for the reason that, in the opinion of the Commissioner of

---

[1] All further statutory references are to the Corporations Code unless otherwise indicated.

[2] We recite the facts as they are alleged in the investors' complaint because the standard of review for a ruling on a demurrer requires that we "assume that the complaint's properly pleaded material allegations are true." (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479].)

Corporations of the State of California, the sale of such securities is subject to qualification under said law, such securities are being or have been offered for sale without first being so qualified, and the Commissioner of Corporations of the State of California finds that qualification of such securities is necessary or appropriate in the public interest or for the protection of investors, and is consistent with the purposes of the policy and provisions of the Corporate Securities Law of 1968."

The DOC also issued a desist and refrain order against the Heath entities regarding their brokerage activities, which stated: "Pursuant to Section 25532 of the California Corporate Securities Law of 1968, you are hereby ordered to desist and refrain from acting as a broker-dealer in the State of California unless and until you have been licensed as such under said law or unless exempt, for the reason that, in the opinion of the Commissioner of Corporations of the State of California, you are acting or have acted as a broker-dealer in violation of Section 25210, and the Commissioner . . . finds that this Order is necessary or appropriate in the public interest or for the protection of investors, and is consistent with the purposes of the policy and provisions of the Corporate Securities Law of 1968."

The DOC subsequently modified/rescinded these orders by entering into "stipulated settlements," first with the Heath entities on May 11, 1998, and then with the Schlarmann entities on June 25, 1998. The settlements provided that the Schlarmann and Heath entities would waive their rights to an administrative hearing and appeal contesting the desist and refrain orders; in return, the parties agreed that the orders were not statements of admission, liability, fault or breach of any statute, regulation or order, and were not intended to be a "statement as to the integrity" of the Heath entities or the Schlarmann entities or of the "investment potential" of any security that those entities might offer, including the investments subject to the March 30, 1998 desist and refrain orders. The stipulated settlements state that the parties intended by the settlements to "save time and expenses from further litigation of this matter."

The investors' original complaint asserted four causes of action against the DOC, alleging that it failed to fulfill its duties under the Corporations Code of protecting investors, such as the plaintiffs, from the fraudulent sales of securities. The complaint cited various provisions of the Corporations Code that it alleged had been violated by the DOC.

The DOC demurred to the complaint and the trial court sustained the demurrer as to each of the causes of action, ruling that the various Corporations Code sections cited by the investors in their complaint reflected discretionary, not mandatory duties and thus could not support liability. The court, however, noted that a provision cited by the investors in their opposition to the demurrer but not in their complaint—section 25612—"appears to impose a mandatory duty to make certain findings prior to rescinding an order." The court further noted that the DOC had entered into stipulated settlements without making the "findings" specified in section 25612, instead merely reciting that the settlements would "save time and expenses."

The trial court granted the investors leave to amend their complaint to state a claim based on a breach of the duty contained in section 25612. The court noted that the investors might not be able to amend their complaint in this fashion because "if the commissioner has a discretionary duty to do something and then has a duty to make findings, the fact that the findings aren't made, which is the mandatory duty, does or does not necessarily give you the relief you're requesting." The court also stated that if the investors were unable to amend their complaint successfully, "I don't think you're going to get another chance to amend."

The investors then filed a first amended complaint, repeating their allegations and contending that the DOC was liable for their financial losses based on its failure to perform its mandatory duty under section 25612. After the DOC again demurred, arguing, among other things, that section 25612 did not create a mandatory duty, the trial court overruled the demurrer, stating: "[T]his court has already determined that [section] 25612 imposes a mandatory duty to make certain findings prior to rescinding an order. The [c]ourt granted leave to amend in order for plaintiffs to allege a specific violation of [section] 25612. . . . Plaintiffs have amended to allege such a violation." The court also determined that section 25612 was intended to protect against the kind of injury alleged by the investors, and that whether the DOC's violation of that section was the proximate cause of the investors' injury was "a question of fact." Finally, the court ruled that there was no specific grant of statutory immunity that protected the DOC from the investors' claim. (See *Creason v. Department of Health Services* (1998) 18 Cal.4th 623, 635 [76 Cal.Rptr.2d 489, 957 P.2d 1323] (*Creason*) [if liability is precluded by a "specific immunity statute," it cannot be found under Gov. Code, § 815.6, " 'which simply imposes a general legal duty or liability' "].)

After answering the first amended complaint, the DOC petitioned this court for a peremptory writ of mandate, contending that if the trial court's ruling were allowed to stand, it would subject the DOC to "unprecedented" liability, making it essentially a guarantor of investments "whenever disgruntled

investors perceive that the Department's [desist and refrain orders] somehow fall short of the terms of the [Corporate Securities Law of 1968]." The DOC complained that by virtue of the instant case alone, "the Department is exposed to staggering losses that would amount to a significant percentage of its annual budget."

In response to the DOC's writ petition, we issued an order to show cause and stayed the trial court proceedings pending our resolution of the question of whether section 25612 imposes a mandatory duty on the DOC under Government Code section 815.6. (See *State of California v. Superior Court* (1984) 150 Cal.App.3d 848, 853, fn. 4 [197 Cal.Rptr. 914] [granting writ relief where trial court overruled demurrer filed by real estate commissioner because "relief by extraordinary writ is an appropriate remedy where, as here, it is desirable that an important jurisdictional question presented by the defense of governmental immunity be speedily determined"]; *County of Sacramento v. Superior Court* (1972) 8 Cal.3d 479, 481 [105 Cal.Rptr. 374, 503 P.2d 1382] [writ relief "is an appropriate remedy where . . . it is desirable that an important jurisdictional question presented by the defense of sovereign immunity from suit should be speedily determined"].) It is to this question we now turn.

II

DISCUSSION

The legal issue presented in this case concerns the intersection of two separate bodies of law, public entity liability under Government Code section 815.6, and the DOC's duties under the Corporate Securities Law of 1968. We, therefore, begin our analysis by summarizing the applicable legal principles with respect to each of these distinct bodies of law.

A. *Public Entity Liability Under Government Code Section 815.6*

The California Tort Claims Act provides that a public entity is not liable for injury arising from an act or omission except as provided by statute. (Gov. Code, § 815, subd. (a) ["Except as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person"]; *Shamsian v. Department of Conservation* (2006) 136 Cal.App.4th 621, 632 [39 Cal.Rptr.3d 62].)

■ One form of statutory public entity liability, enacted in 1963, is contained in Government Code section 815.6, which establishes a private right of action whenever: (i) "a public entity is under a mandatory duty imposed by an enactment"; (ii) the enactment was "designed to protect" against the injury claimed; and (iii) the injury was "proximately caused" by the public entity's failure to discharge its mandatory duty.[3] (See *Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 498 [93 Cal.Rptr.2d 327, 993 P.2d 983] (*Haggis*); *State of California v. Superior Court, supra,* 150 Cal.App.3d at p. 854 [recognizing "three-pronged test for determining whether liability may be imposed on a public entity" under Gov. Code, § 815.6].)

■ In applying Government Code section 815.6, the first "and foremost" precondition to liability is that "the enactment at issue be *obligatory*, rather than merely discretionary or permissive, in its directions to the public entity; it must *require*, rather than merely authorize or permit, that a particular action be taken or not taken." (*Haggis, supra,* 22 Cal.4th at p. 498.) "It is not enough, moreover, that the public entity or officer have been under an obligation to perform a function if the function itself involves the exercise of discretion." (*Ibid.*; see *Walt Rankin & Associates, Inc. v. City of Murrieta* (2000) 84 Cal.App.4th 605, 614 [101 Cal.Rptr.2d 48] ["not every statute that uses the word 'shall' is obligatory rather than permissive, and there may be factors other than statutory language that may indicate that apparently obligatory language was not intended to foreclose a government entity's exercise of discretion"]; *County of Los Angeles v. Superior Court, supra,* 102 Cal.App.4th at p. 639 ["The use of the word 'shall' in an enactment does not necessarily create a mandatory duty"].) Thus, even where a statute includes "mandatory language," there may be " 'other factors [that] indicate that apparent obligatory language was not intended to foreclose a governmental entity's or officer's exercise of discretion.' " (*Creason, supra,* 18 Cal.4th at p. 631.)

"Whether an enactment creates a mandatory duty is a question of law . . . ." (*Haggis, supra,* 22 Cal.4th at p. 499; see *Nunn v. State of California* (1984) 35 Cal.3d 616, 624 [200 Cal.Rptr. 440, 677 P.2d 846] (*Nunn*).) In deciding whether a statute imposes a mandatory duty, the courts look to legislative

---

[3] Government Code section 815.6 states: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

The term " '[e]nactment' " as used in the statute is separately defined to mean "a constitutional provision, statute, charter provision, ordinance or regulation." (Gov. Code, § 810.6; see *County of Los Angeles v. Superior Court* (2002) 102 Cal.App.4th 627, 638 [125 Cal.Rptr.2d 637] [" ' "This definition is intended to refer to all measures of a formal legislative or quasi-legislative nature" ' "].)

intent, which is determined primarily, although not exclusively, from the statutory text. (*Nunn*, at p. 624.) In construing the statute, we must give the statute a reasonable construction that conforms to the apparent purpose and intention of the lawmakers, and "the various parts of the statutory enactment must be harmonized by considering the particular clause in the context of the whole statute." (*Id.* at p. 625; see *Haggis*, at p. 500 [reviewing court must "examine the language, function and apparent purpose of" the pertinent statutory provision "to determine if [it] creates a mandatory duty"].)

### B. *The Corporate Securities Law of 1968*

Section 25612 was enacted as part of a comprehensive reform of California's securities laws passed by the Legislature as the Corporate Securities Law of 1968 (the Act). (§ 25000 et seq.; see generally 1 Marsh & Volk, Practice Under the Cal. Securities Laws (2006) § 1.01 et seq. (Marsh and Volk).) The "primary objective" of the Act was the "creation of a balanced regulatory scheme to cope with the problems of modern securities markets in California." (Marsh & Volk, *supra*, § 1.01, p. 1–3.)

Under the Act, all offers and sales of securities in California must be qualified with the Commissioner of the DOC (the Commissioner) unless specifically exempted. (§ 25110.) Similarly, persons may not act as broker-dealers[4] or investment advisors[5] in the State of California without first obtaining a certificate from the Commissioner authorizing such activity. (§§ 25210, 25230.) The Act also prohibits a number of deceptive practices, such as utilizing false or misleading statements in the purchase or sale of securities and engaging in insider trading. (§§ 25501, 25502.)

The Act provides two primary enforcement mechanisms. First, it authorizes the Commissioner to prevent violations of the Act by issuing injunctive

---

[4] Section 25004, subdivision (a)(4) defines a " '[b]roker-dealer' " as anyone "engaged in the business of effecting transactions in securities in this state for the account of others or for his own account," and then lists numerous exceptions, excluding, by way of example, a person who "buys or sells securities for his own account" and "not as part of a regular business."

[5] Section 25009, subdivision (a) defines an " '[i]nvestment adviser' " as "any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing or selling securities, or who, for compensation and as a part of a regular business, publishes analyses or reports concerning securities," and then lists a number of exceptions not relevant here.

orders against violators of the Act. Second, it provides for private rights of action by injured parties directly against violators of the Act for financial losses incurred.[6]

### 1. Enforcement by the Commissioner

Section 25532 of the Act provides discretionary authority to the Commissioner to enforce the Act's licensing and qualification requirements. Section 25532, subdivision (a) states that "[i]f, in the opinion of the commissioner," a security is being sold without proper qualification, "the commissioner may order the issuer or offeror of the security to desist and refrain from the further offer or sale of the security until qualification has been made." Similarly, under section 25532, subdivision (b), "[i]f, in the opinion of the commissioner," a person is acting "as a broker-dealer or investment adviser" without first being licensed to do so, "the commissioner may order that person to desist and refrain from the activity until the person has been appropriately licensed or the required filing has been made under this law."

Once the Commissioner has issued such an order, the Act provides certain procedural rights to persons affected by the order, including the right to a hearing challenging the order under the Administrative Procedures Act. (Corp. Code, § 25532, subd. (d); Gov. Code, § 11500 et seq.) If a hearing is not requested, however, the Commissioner's order becomes final and cannot be reviewed by any court or agency. (§ 25532, subd. (d).)

Section 25612 of the Act, which is contained in a chapter of the Act entitled "Administration," provides: "No rule, form or order may be made, amended, or rescinded unless the commissioner finds that the action is necessary or appropriate in the public interest or for the protection of investors and consistent with the purposes fairly intended by the policy and provisions of this law."

### 2. Enforcement by Private Parties

The Act also creates a "new form of statutory liability" in the form of private rights of action designed to "afford victims of securities fraud a remedy without the task of proving common law fraud." (*Boam v. Trident Financial Corp.* (1992) 6 Cal.App.4th 738, 743, 744 [8 Cal.Rptr.2d 177]; see *America Online, Inc. v. Superior Court* (2001) 90 Cal.App.4th 1, 14 [108 Cal.Rptr.2d 699] ["This California law was designed to protect the public

---

[6] The Act also authorizes the Attorney General and appropriate district attorney to "institute appropriate criminal proceedings" with or without a referral from the Commissioner. (§ 25533.)

from fraud and deception in securities matters, by providing statutory remedies for violations of the California Corporations Code"].) Thus, in a chapter entitled "Civil Liability," the Act specifically authorizes four separate causes of action to enable private plaintiffs to seek redress directly from persons who have violated certain of its provisions. (See §§ 25500, 25501, 25502, 25503.)

 Specifically, the Act creates a private right of action for: (i) buyers or sellers of securities who are injured by persons who violate section 25400, which prohibits actions that "creat[e] a false or misleading appearance with respect to the market for any security" (see § 25500); (ii) buyers and sellers of securities who are injured by persons who violate section 25401, which prohibits the use of "untrue statement[s] of a material fact" or omissions of material facts to buy or sell securities (see § 25501); (iii) buyers and sellers of securities who are injured by persons who violate section 25402, which prohibits certain forms of insider trading (§ 25502); and (iv) buyers of securities sold in violation of sections 25110, 25120 or 25130, which require securities sold in California to either be qualified for sale or exempt from the qualification requirements (§ 25503). In each instance, the private right of action is created against the person (or persons) alleged to have violated the specified provisions of the Act. Significantly, there is no suggestion that the DOC can be held liable for either: (i) another person's violation of the provisions of the Act for which a private right of action is provided; or (ii) itself violating provisions of the Act for which no private right of action is provided, such as section 25612.[7]

While intending to minimize securities fraud, the drafters of the Act were also cognizant of the dangers of casting the net of civil liability too broadly.

---

[7] The Act specifies that liability under the Act extends to "[e]very person who directly or indirectly controls [the] person liable," as well as "every employee of a person so liable who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation." (§ 25504.) There is no suggestion in the Act, the case law or in the legislative history that this provision extends liability to securities regulators, such as the DOC. (See *Durham v. Kelly* (9th Cir. 1987) 810 F.2d 1500, 1505 [plaintiff could not establish liability under § 25504 against defendant where evidence showed only that defendant "had actual power or influence over general corporate affairs" but not that the defendant was a " ' "culpable participant" in the alleged illegal activity' "]; 1 Marsh & Volk, *supra*, § 14.03[4][c], p. 14-25 [discussing persons who may be liable under § 25504 and noting that under existing case law "a controlling person may not be found liable for any alleged inaction, such as a failure to investigate and exercise control over others"]; Hanna & Van Atta, Cal. Common Interest Developments: Law and Practice (2006 ed.) § 16:67, p. 971 [under Corp. Code, § 25504, "[l]iability extends not just to the seller, but to 'controlling persons.' This means principal executive officers or directors of corporations, employees who materially aid in a transaction constituting a violation, and broker-dealers or agents who materially aid in a transaction constituting a violation"]; cf. *Sherman v. Lloyd* (1986) 181 Cal.App.3d 693, 703 [226 Cal.Rptr. 495] [pursuant to § 25504, general partner and shareholder of violator could be potentially liable, but violator's accounting firm was not].)

In the words of its principal drafters,[8] the Act "attempts to provide a scheme of liability . . . that will adequately protect the investing public without undue hardship upon persons who might be potential defendants in such actions." (Marsh & Volk, *supra,* § 14.01[3], p. 14-14; cf. *Boam v. Trident Financial Corp., supra,* 6 Cal.App.4th at p. 744 [noting the Act "imposed certain restrictions" on recovery, "such as shortening the statute of limitations for bringing a statutory action and limiting the damages available"]; *California Amplifier, supra,* 94 Cal.App.4th at p. 109 ["The purpose of the Act in this regard is to create statutory liability that eliminates some of the elements of common law fraud, but balances this expansion of liability by placing other restrictions on recovery"].) In section 25510, the Act explicitly directs courts not to rely on the Act's provisions to authorize private rights of action beyond those explicitly enumerated. (§ 25510 [mandating that except as "explicitly provided," no civil liability in favor of "any private party" against any "person" (including government) shall arise by "implication from or as a result of the violation of any provision of this law or any rule or order hereunder"].)[9] The drafters emphasized that "[i]t is difficult to see how language" restricting the creation of causes of action for violations of the Act "could be any more explicit than that contained in [section] 25510." (Marsh & Volk, *supra,* § 14.02[2], p. 14-15.)[10]

---

[8] Our Supreme Court has referred to former Commissioner Volk and Professor Marsh as the Act's "principal drafters" and relied on their treatise interpreting the Act as authoritative. (See *Mirkin v. Wasserman* (1993) 5 Cal.4th 1082, 1103, fn. 10 [23 Cal.Rptr.2d 101, 858 P.2d 568] [relying on Marsh & Volk treatise for interpretation of the Act while noting that "Professor Harold Marsh, Jr., was the reporter for the committee that drafted the California Corporate Securities Law of 1968" and that "Robert H. Volk was Commissioner of Corporations at that time"]; see also *California Amplifier, Inc. v. RLI Ins. Co.* (2001) 94 Cal.App.4th 102, 110 [113 Cal.Rptr.2d 915] (*California Amplifier*) [relying on Marsh & Volk as "leading treatise" for interpretation of the Act].)

[9] Section 25510 states in full: "*Except as explicitly provided in this chapter, no civil liability in favor of any private party shall arise against any person by implication from or as a result of the violation of any provision of this law or any rule or order hereunder.* Nothing in this chapter shall limit any liability which may exist by virtue of any other statute or under common law if this law were not in effect." (Italics added.) Section 25013 defines " '[p]erson' " as "an individual, a corporation, a partnership, a limited liability company, a joint venture, an association, a joint stock company, a trust, an unincorporated organization, a government, or a political subdivision of a government."

[10] We grant the investors' unopposed request for judicial notice dated March 2, 2007, which asks that we take judicial notice of comment 3 to section 705 of the Uniform Securities Act of 1985. Comment 3 states that subdivision (c) of the Uniform Securities Act of 1985 "specifies the standards which must be followed by the Administrator when adopting, amending, or repealing any rule or order under this Act." (7C West's U. Laws Ann. (2006) U. Securities Act of 1985, com. 3 to § 705, p. 307.)

Comment 3 provides little support for the investors' contentions. Even assuming the language of the comment is helpful to the investors' claim, the comment is not a reliable indicator of the intent of the California Legislature, as the language of section 705,

### C. *Section 25612 Does Not Create a Mandatory Duty Under Government Code Section 815.6*

Investors contend that their complaint's allegations state a claim against the DOC under Government Code section 815.6 for breach of a mandatory duty embodied in section 25612. They argue that their claim satisfies all three prongs of Government Code section 815.6 because: (i) "section 25612 imposes a mandatory duty upon [the DOC] to make a specific finding that an act 'is necessary or appropriate in the public interest . . .' *before* it may make, amend, or rescind an order"; (ii) the requirement that the DOC make these findings was intended to protect against the kind of injury suffered by the investors; and (iii) the breach of the DOC's mandatory duty to make the requisite finding was a proximate cause of "the plaintiffs' investment losses."

We disagree that section 25612 creates any mandatory duty under Government Code section 815.6, and thus analyze, and resolve, the investors' contention solely by reference to the first prong of Government Code section 815.6 liability. (See *Haggis, supra,* 22 Cal.4th at p. 498 [declining to decide whether claims satisfied second and/or third prongs for Gov. Code, § 815.6 liability where claims failed other prongs].)

### D. *Section 25612 Does Not Create Any Mandatory Duty*

■ It is true, as the investors emphasize, that section 25612 utilizes mandatory language, specifically in its direction that "[n]o . . . order may be . . . amended, or rescinded unless" the Commissioner finds the action "necessary or appropriate." Despite this mandatory language, however, the provision fits squarely within an overall statutory framework granting the Commissioner "pervasively discretionary" authority to address violations of the Act. (*Haggis, supra,* 22 Cal.4th at p. 506; see Marsh & Volk, *supra,* § 8.01[3], p. 8-8 [explaining that the Act continued the tradition of placing "broad discretionary authority in the hands of the Commissioner"]; see, e.g., § 25610 ["The commissioner may from time to time make, amend and *rescind* such rules, forms, and *orders* as are necessary to carry out the provisions of this law" and "may in his discretion waive any requirement of any rule or form in situations where in his opinion such requirement is not necessary in the public interest or for the protection of investors" (italics added)].)

Under the Act, even if "in the opinion of the commissioner," (§ 25532, subd. (a)) a security is being offered without qualification or a broker-dealer

---

subdivision (c) of the Uniform Securities Act of 1985 to which it refers differs materially from section 25612, and the comment appears as part of a uniform act promulgated 17 years after enactment of section 25612.

is operating without an appropriate license, the Commissioner is not required to take any action. Rather, the Act is explicitly permissive, stating only that if the Commissioner perceives such a violation, he "may" issue a desist and refrain order, as the Commissioner did in this case. (*Ibid.*)

The investors acknowledge that the decision to *issue* a desist and refrain order is discretionary, but contend that once such an order has been issued, it cannot be *rescinded* without the Commissioner first making a mandatory "finding" that the Commissioner's own action is "necessary or appropriate."[11] The investors argue that this statutory command creates a basis for liability against the DOC under Government Code section 815.6.[12] We disagree.

■ First, the only thing that section 25612 mandates is that the Commissioner "*finds*" that his actions are "necessary or appropriate." (§ 25612, italics added.) The section does not provide any further guidance with respect to exactly what the Commissioner must do, for example, by mandating written or even express *findings*. (See *Ensworth v. Mullvain* (1990) 224 Cal.App.3d 1105, 1112 [274 Cal.Rptr. 447] [statute that authorized an injunction if the judge " 'finds by clear and convincing evidence that unlawful harassment exists,' " did not "require the court to make a specific finding on the record" prior to issuing injunction, but was satisfied by finding "necessarily implie[d]" by the issuance of injunction itself].) In fact, the section does not appear to require any *action* at all, but rather a state of mind: that the Commissioner, before acting, deems the action to be taken "necessary or appropriate." (§ 25612.) This statutory language, which fails to mandate any *specific* conduct on the part of the Commissioner, strongly supports a conclusion that section 25612 does not create any "mandatory duty." (*O'Toole v. Superior Court* (2006) 140 Cal.App.4th 488, 510 [44 Cal.Rptr.3d 531] ["A statute is deemed to impose a mandatory duty on a public official only if the statute affirmatively imposes the duty and provides implementing guidelines"]; *Clausing v. San Francisco Unified School Dist.* (1990) 221 Cal.App.3d 1224, 1240 [271 Cal.Rptr. 72] ["If rules and guidelines for the implementation of an alleged mandatory duty are not set forth in an otherwise

---

[11] The DOC vigorously contends that the stipulated settlements did not modify or rescind the desist and refrain orders and thus, whether or not it creates a mandatory duty, section 25612 does not even apply. In light of our conclusion that no mandatory duty is created, we need not address this alternate ground for reversal. Rather, we assume (without deciding) that, as the investors contend, the stipulated settlements either constituted the "ma[king]" of a new order, or "amended, or rescinded" the previous desist and refrain orders, triggering section 25612. (§ 25612.)

[12] We note that a ruling in favor of the investors would create a perverse incentive for the DOC to be less aggressive, not more aggressive, in protecting investors from securities fraud. This is because, under the investors' legal theory, if the DOC takes no action, it cannot become liable for any damages; conversely, the DOC does become subject to liability if it issues a desist and refrain order and a settlement or modification of that order later becomes necessary or appropriate.

prohibitory statute, it cannot create a mandatory duty"]; cf. *Nunn, supra,* 35 Cal.3d at p. 625 [statute commanding that standards for armed security guards " 'shall be prescribed by the Department of Consumer Affairs' " and prohibiting guards licensed after Jan. 1, 1976, from carrying firearms without meeting those standards, while arguably implying that standards should be promulgated before Jan. 1, 1976, did not create mandatory duty to do so].)

■ Second, even assuming that section 25612 mandates express or implied *findings* as a prerequisite to rescinding an order, the required findings themselves rely on a discretionary application of the Commissioner's judgment and expertise. (*Haggis, supra,* 22 Cal.4th at p. 498 ["It is not enough" for Gov. Code, § 815.6 liability "that the public entity or officer have been under an obligation to perform a function if the function itself involves the exercise of discretion"].) The Commissioner is required to find that his action is "necessary or appropriate in the public interest or for the protection of investors and consistent with the purposes fairly intended by the policy and provisions" of the Act. (§ 25612.) This legislative command does not dictate any particular result, or even provide a standard by which action taken by the Commissioner can be objectively measured, but rather "explicitly calls upon the judgment, expertise and discretion of the" Commissioner to define what action, if any, is "necessary or appropriate"—again, strongly supporting the conclusion that there is no mandatory duty. (*Haggis,* at p. 507 [statutory language that calls upon the judgment, expertise and discretion of the public officer "does not create a mandatory duty within the meaning of Government Code section 815.6"]; see *Fox v. County of Fresno* (1985) 170 Cal.App.3d 1238, 1244 [216 Cal.Rptr. 879] ["If the statute were to be construed as mandatory, it would be very difficult, if not impossible, to reconcile that part of the statute which says that 'the enforcement agency shall' with that portion which gives the agency the authority to take 'any appropriate action' "].)[13]

■ In sum, while section 25612 includes language that appears mandatory, this language is situated squarely within a statutory framework that entrusts the action to be taken, if any, to the sound judgment, expertise and

---

[13] The investors' reliance on *Morris v. County of Marin* (1977) 18 Cal.3d 901 [136 Cal.Rptr. 251, 559 P.2d 606] is unavailing. The statute at issue in *Morris*—Labor Code section 3800, which states that prior to issuing a construction permit, a county " 'shall require that each applicant for such permit have' " a " 'valid policy of workmen's compensation insurance' "— stands in sharp contrast to section 25612 in that it leaves no room for the county's judgment, expertise or discretion in carrying out its command. (*Morris,* at pp. 906, 910, fn. 6 [recognizing that while liability attached based on mandatory language of statute, "there are unquestionably instances in which other factors will indicate that apparent obligatory language was not intended to foreclose a governmental entity's or officer's exercise of discretion"].) The investors' reliance on *Young v. City of Inglewood* (1979) 92 Cal.App.3d 437 [154 Cal.Rptr. 724] is similarly unpersuasive. (See *id.* at p. 440 [holding that because enactment at issue was almost identical to that considered in *Morris,* "[t]he result must be the same as in *Morris*"].)

discretion of the Commissioner. In our view, such an enactment does not create a mandatory duty under Government Code section 815.6.

E. *The Act Evidences an Unambiguous Legislative Intent to Preclude the Creation of Any Implicit Private Rights of Action*

In addition to our conclusion in the preceding section that section 25612 creates only discretionary, not mandatory, duties, we also conclude the investors' action must be dismissed on a separate and independent ground. The investors' lawsuit, which seeks to hold the DOC liable for violating section 25612, contravenes section 25510 of the Act, which demonstrates a clear legislative intent that a violation of section 25612 creates no private right of action.

In section 25510, the Act expresses a clear and unambiguous legislative intent that, apart from the four specific private rights of action provided in sections 25500 through 25503, no other private remedies are intended. Specifically, section 25510 states that except as "explicitly pro-vided," no civil liability in favor of "any private party" shall arise against "any person by implication from or as a result of the violation of any provision of this law or any rule or order hereunder." (§ 25510.) The clear import of this provision, as supported by the statements of the drafters of the Act, is that section 25510 is intended "to make it clear that the judiciary is not authorized to invent causes of action . . . additional to those provided in the statute." (Marsh & Volk, *supra*, § 14.02[1], p. 14-14].) In other words, section 25510 is specifically intended "to prevent the courts from using other provisions of the [Act] to create implied causes of action." (Marsh & Volk, *supra*, § 14.02[1], p. 14-15.)

The investors' theory of liability in the instant case—that the DOC can be held liable for violating section 25612—is directly contrary to section 25510 in that it creates *implicit* civil liability as "a result of the violation of [a] provision of" the Act. (§ 25510.) To permit such liability under the general command of Government Code section 815.6 would violate the Legislature's more recently enacted and more specific command in section 25510, and frustrate its express purpose that courts not rely on "other provisions of the statute" to create causes of action "additional to those" specifically provided. (Marsh & Volk, *supra*, § 14.02[1], pp. 14-14 to 14-15; § 25510; see *Arbuckle-College City Fire Protection Dist. v. County of Colusa* (2003) 105 Cal.App.4th 1155, 1166 [130 Cal.Rptr.2d 182] ["Generally, it can be presumed that when the Legislature has enacted a specific statute to deal with a particular matter, it would intend the specific statute to control over more general provisions of law that might otherwise apply"]; *People v. Toney* (2004) 32 Cal.4th 228, 232 [8 Cal.Rptr.3d 577, 82 P.3d 778] (*Toney*) ["If the

statutory language is unambiguous, 'we presume the Legislature meant what it said, and the plain meaning of the statute governs' "].)

 Of course, a specific legislative intent need not appear in section 25612 to create a private right of action to enforce that section as it is Government Code "section 815.6, not the predicate enactment, that creates the private right of action." (*Haggis, supra*, 22 Cal.4th at pp. 499–500, italics omitted [rejecting any requirement that the "enactment establishing a mandatory duty *itself* manifest an intent to create a private right of action"]; see *Walt Rankin & Associates, Inc. v. City of Murrieta, supra*, 84 Cal.App.4th at p. 614 [same].) Here, however, it is not the absence of a legislative intent in section 25612 that concerns us, but rather the presence of a clear and explicit legislative intent that a violation of section 25612 *does not* give rise to any private right of action. Clearly, the Legislature may, when enacting legislation, provide that the new law creates only specifically enumerated private rights of action, and otherwise leaves the available legal remedies unchanged. The Legislature did just that here, and we are bound to honor its wishes. (*Toney, supra*, 32 Cal.4th at p. 232 ["If the statutory language is unambiguous, 'we presume the Legislature meant what it said, and the plain meaning of the statute governs' "].)

 In sum, considering section 25612 in the context of the Act as a whole (*Nunn, supra*, 35 Cal.3d at p. 624), we conclude that the Legislature intended: (i) that the Commissioner's actions with respect to section 25612 would be discretionary and not subject the DOC to liability under Government Code section 815.6; and (ii) that enactment of section 25612 would not create any private right of action against the DOC. As a result of either of these conclusions, and certainly both, liability is unavailable as a matter of law on the investors' claim for the DOC's alleged violation of section 25612. Consequently, the trial court should have sustained the DOC's demurrer to the investors' first amended complaint without leave to amend.[14]

---

[14] Where there is " 'a reasonable possibility that [a pleading] defect can be cured by amendment,' " the trial court should grant leave to amend; the burden of proving that there is such a " 'reasonable possibility,' " however, rests with the plaintiff. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].) Here, we do not see any reasonable possibility that the investors could, based on the facts of this case, state a claim against the DOC. In any event, the investors have neither argued that they should be given leave to amend the first amended complaint in their briefing before this Court, nor posited any viable legal theory upon which they could establish liability against the DOC. Consequently, to the extent the investors believe they are entitled to leave to again amend their complaint, they have forfeited that claim by not presenting it. (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106 [87 Cal.Rptr.2d 754] ["An appellate court is not required to examine undeveloped claims, nor to make arguments for parties . . . ," citing *People v. Gidney* (1937) 10 Cal.2d 138, 142–143 [73 P.2d 1186]].)

## DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to vacate its November 9, 2006 order overruling the DOC's demurrer to the first amended complaint, and enter a new order sustaining the demurrer without leave to amend and dismissing the first amended complaint. (Code Civ. Proc., §§ 430.10, subd. (e), 581, subd. (f)(1).) The stay issued by this court on January 31, 2007, is vacated. The parties are to bear their own costs in the writ proceeding. (Cal. Rules of Court, rule 8.490(m)(2).)

Benke, Acting P. J., and Aaron, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied October 31, 2007, S156040.