Filed 11/28/22  Conway v. San Diego City Employees' Retirement System CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| SEAN CONWAY et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>SAN DIEGO CITY EMPLOYEES' RETIREMENT SYSTEM et al.,<br><br>    Defendants and Respondents. | D079355<br><br><br>(Super. Ct. No. 37-2020-00007020-CU-FR-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Gregory W. Pollack, Judge.  Affirmed.

Law Office of Michael A. Conger and Michael A. Conger for Plaintiffs and Appellants, Sean Conway and Susanne Conway.

Noonan Lance Boyer & Banach, David J. Noonan and Genevieve M. Ruch for Defendants and Respondents, San Diego City Employees' Retirement System and Sandra Claussen.

Plaintiffs and appellants Sean Conway and Susanne Conway sued the San Diego City Employees' Retirement System (SDCERS) and its employee/medical review officer Sandra Claussen for breach of fiduciary duty

and damages arising out of Claussen's alleged assurances that Sean Conway[1] would not lose his disability pension by taking a new job, and SDCERS's ensuing administrative proceeding requiring him to establish entitlement to his pension. The trial court sustained SDCERS and Claussen's demurrer to plaintiffs' operative complaint without leave to amend, ruling the action was barred by Government Code[2] sections 821.6 and 815.2, as the gravamen of the plaintiffs' claim was one for malicious prosecution: that SDCERS wrongfully commenced an action against Conway based on Claussen's concealment.

On appeal, plaintiffs contend the court should have granted them leave to amend state claims against SDCERS for its violation of section 815.6 in failing to discharge a mandatory duty, and against Claussen for actual malice, corruption or fraud. They further contend the court erred by applying section 821.6, as their lawsuit was not based on SDCERS's steps to ensure payment of proper disability benefits, but on Claussen's actions in, among other things, failing to properly advise them about the risks of Conway accepting a new job, which had nothing to do with SDCERS's administrative process. Plaintiffs finally contend that contrary to SDCERS's argument, their government claim was timely filed on the basis of delayed discovery due to Claussen's intentional concealment. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

We state the facts from plaintiffs' operative complaint. In so doing, we accept the truth of material facts properly pleaded, not "contentions, deductions, or conclusions of fact or law," and consider matters properly

---

[1] References to Conway are to Sean Conway.

[2] Undesignated statutory references are to the Government Code.

subject to judicial notice. (*Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc.* (2017) 2 Cal.5th 505, 512; *State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 346; *San Diego Unified School Dist. v. Yee* (2018) 30 Cal.App.5th 723, 726.)

In 2004, Conway, then an officer for the San Diego Police Department, sustained a work-related back injury resulting in multiple surgeries and spinal fusions. In 2008, Claussen, a medical review officer employed by SDCERS, recommended that SDCERS's board approve Conway's disability retirement. SDCERS granted Conway permanent disability retirement after finding his injuries had resulted in permanent incapacity from the substantial performance of his duties.

Conway and his family moved to Idaho in 2008. The following year, he obtained a job as a jail technician, and later secured a job as a detention specialist at a juvenile detention facility.

In 2013, Conway considered applying for a position as a detention deputy in an Idaho county jail that paid $23 per hour, but became concerned that accepting this position might jeopardize his disability pension. That year, plaintiffs met with Claussen to inquire whether Conway's acceptance of the detention deputy position would jeopardize his disability pension. Claussen told plaintiffs that the position was similar to a corrections deputy in the San Diego County Jail system run by the San Diego County Sheriff, and that since the San Diego Police Department did not staff jails, there was no comparable position with the San Diego Police Department so that Conway's taking the Idaho position would not jeopardize his disability pension. Plaintiffs asked Claussen multiple times to put her assurances in writing, but she declined, telling them, "We don't do that, but you have nothing to worry about."

3

Conway took the Idaho position. Claussen intentionally concealed her assurances to plaintiffs from SDCERS, which later commenced an administrative action to have Conway's disability retirement taken away. Plaintiffs did not discover Claussen's concealment until they deposed her in June 2019. That month, Conway and SDCERS participated in a hearing before a retired judge. The judge ruled in Conway's favor and recommended his disability retirement continue. In November 2019, the SDCERS board voted to continue his disability retirement.

Plaintiffs sued SDCERS for intentional and negligent representation and concealment. In part, they alleged that had Claussen told Conway that taking the Idaho detention deputy position would have jeopardized his disability retirement, Conway would not have taken the position but he took it as a result of her statements. They alleged Claussen either knew her representations were false when she made them or she made them recklessly and without regard for their truth, Claussen intended plaintiffs rely on her representations, and plaintiffs' reliance on them was a substantial factor in causing them harm.

After SDCERS demurred, plaintiffs filed a first amended complaint alleging a single cause of action for breach of fiduciary duty against both SDCERS and Claussen. The operative complaint was based on the same underlying facts, but added allegations concerning Claussen's intentional concealment and plaintiffs' failure to discover it. Plaintiffs alleged that "in her position as medical review officer, Claussen acts as an administrator of SDCERS." (Some capitalization omitted.) Plaintiffs alleged they "incurred substantial expenses and suffered substantial emotional distress during SDCERS' efforts to eliminate [Conway's] disability pension."

4

SDCERS and Claussen again demurred, arguing a fair reading of the first amended complaint showed it was premised on allegations that plaintiffs were wrongfully subjected to the administrative process, but SDCERS and Claussen were absolutely immune from liability under the Government Code for prosecuting an administrative proceeding. Specifically, they argued Claussen's actions in instituting any judicial or administrative proceeding within the scope of her employment, even if malicious or without probable cause, were immune under section 821.6 and because she was immune, SDCERS was likewise immune under section 815.2, subdivision (b). They further argued that Claussen as a medical advisor did not stand in a fiduciary relationship to Conway in any event, but even if she did, she did not breach any fiduciary duty, which was only to fully and fairly describe the retirement plan or various options and procedures. Finally, SDCERS and Claussen argued plaintiffs' claims were barred because they failed to timely comply with the Government Claims Act filing requirements under section 911.2, subdivision (a). They argued plaintiffs could not amend their complaint to state a valid cause of action, asking the court to sustain the demurrer without leave to amend. SDCERS and Claussen sought judicial notice of certain SDCERS board rules, several Municipal Code sections, the filing and contents of plaintiffs' government claim, and the retired judge's proposed statement of decision on SDCERS's proceeding to review Conway's retirement disability.

In opposition, plaintiffs argued they were not suing because SDCERS brought an administrative proceeding, but because Claussen intentionally concealed relevant evidence from the SDCERS's board. They argued case law—*Masters v. San Bernardino County Employees Retirement Assn.* (1995) 32 Cal.App.4th 30 (*Masters*) and *Hittle v. Santa Barbara County Employees*

5

*Retirement Assoc.* (1985) 39 Cal.3d 374 (*Hittle*)—refuted the argument that they could not state a claim for breach of fiduciary duty as their claim was that Claussen intentionally concealed her statements from SDCERS, which was assertedly conduct that survived a demurrer in *Masters*. Plaintiffs argued the Government Claims Act did not apply to their claim, which was timely because they adequately pleaded delayed discovery of Claussen's intentional concealment. They argued the court should grant leave to amend any defect found in their pleading.

Granting SDCERS and Claussen's request for judicial notice, the trial court sustained the demurrer without leave to amend. It ruled: "The substance or gravamen of plaintiffs' claim is that the SDCERS Board's action was wrongfully commenced against Conway based upon Claussen's concealment, i.e., it was Claussen's concealment that caused the action to be brought against Conway. 'The test [for malicious prosecution] is whether the defendant was actively instrumental in causing the prosecution.' [Citation.] That plaintiffs labeled their cause of action 'breach of fiduciary duty' does not take away Claussen's . . . [section] 821.6 immunity given the fact that Conway has alleged that it was Claussen's breach of fiduciary duty that caused the prosecution of the action against him by SDCERS." (Italics omitted.) The court further ruled that the absolute immunity of section 821.6 was not limited to malicious prosecution causes of action, but "extends to claims for defamation and intentional infliction of emotional distress, as well as acts undertaken in the course of the investigation, statements made to a plaintiff in the course of investigating, action taken in preparation for filing or prosecuting a judicial or administrative complaint, and pre-filing investigation even if authorities later decide not to file charges." It ruled Claussen's act of concealment fell within the statute's coverage. It ruled

6

*Masters, supra*, 32 Cal.App.4th 30 did not consider or cite section 821.6, and thus did not assist plaintiffs. The court ruled that because Claussen was immune, SDCERS was immune under section 815.2. It denied leave to amend, finding there was no reasonable possibility plaintiffs could amend to state a viable cause of action.

Plaintiffs filed this appeal from the order, and we construed it as an appeal from the ensuing judgment of dismissal.

## DISCUSSION

### I. *Standard of Review*

We apply well settled standards. " 'In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.' [Citation.] ' " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . . We also consider matters which may be judicially noticed." . . . Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.' " ' " (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768.) "We 'accept as true not only those facts alleged in the complaint, but also facts that may be implied or inferred from those expressly alleged.' " (*Munoz v. Patel* (2022) 81 Cal.App.5th 761, 771.) " ' " '[A] demurrer based on an affirmative defense will be sustained only where the face of the complaint discloses that the action is necessarily barred by the defense.' " ' " (*Silva v. Langford* (2022) 79 Cal.App.5th 710, 716.)

We affirm the judgment if it is correct on any ground stated in the demurrer whether or not the trial court relied on it, liberally construing the pleading with a view to substantial justice between the parties. (Code Civ. Proc., § 452; *Aubry v. Tri-City Hospital Dist*. (1992) 2 Cal.4th 962, 967;

*Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 726; *San Mateo Union High School Dist. v. County of San Mateo* (2013) 213 Cal.App.4th 418, 425; *Las Lomas Land Co., LLC v. City of Los Angeles* (2009) 177 Cal.App.4th 837, 848.)

When a demurrer is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment. (*Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010.) " ' "The burden of proving such reasonable possibility is squarely on the plaintiff." ' " (*Ibid.*; *Srouy v. San Diego Unified School Dist.* (2022) 75 Cal.App.5th 548, 559 (*Srouy*).)

II. *Violation of Section 815.6 For Failure to Discharge a Mandatory Duty*

The Conways contend the trial court should have granted them leave to amend because their operative complaint states a cause of action against SDCERS for breach of a mandatory duty to provide its beneficiaries accurate advice. They base their claim on three predicates that they say required SDCERS to perform this duty: (1) Probate Code section 16002; (2) article XVI, section 17 of the California Constitution; and (3) Civil Code sections 1709 and 1710.[3] Assessing each of these enactments separately below, we reject the contention.

A. *Legal Principles*

Under the Government Claims Act, a public entity is not liable for injury " '[e]xcept as otherwise provided by statute.' " (*State Dept. of State*

---

[3] SDCERS and Claussen complain that plaintiffs raise section 815.6 liability as an entirely new theory not mentioned in the trial court. But it is settled that a plaintiff may propose an amendment at any time, even for the first time on appeal. (*640 Tenth, LP v. Newsom* (2022) 78 Cal.App.5th 840, 865; *Salazar v. Target Corporation* (2022) 83 Cal.App.5th 571, 577; *Mercury Ins. Co. v. Pearson* (2008) 169 Cal.App.4th 1064, 1072.)

*Hospitals v. Superior Court, supra*, 61 Cal.4th at p. 348; *Srouy, supra*, 75 Cal.App.5th at p. 559.) Section 815.6 is one of these statutes. (*State Dept.*, at p. 348.) "[T]he intent of the act is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances: immunity is waived only if the various requirements of the act are satisfied." (*Williams v. Horvath* (1976) 16 Cal.3d 834, 838.)

Section 815.6 provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." "Thus, the government may be liable when (1) a mandatory duty is imposed by enactment, (2) the duty was designed to protect against the kind of injury allegedly suffered, and (3) breach of the duty proximately caused injury." (*State Dept. of State Hospitals v. Superior Court, supra*, 61 Cal.4th at p. 348.)

"Courts have delineated what is necessary to establish a mandatory duty. 'First and foremost, . . . the enactment at issue [must] be *obligatory*, rather than merely discretionary or permissive, in its directions to the public entity; it must *require,* rather than merely authorize or permit, that a particular action be taken or not taken.' [Citation.] 'It is not enough, moreover, that the public entity or officer have been under an obligation to perform a function *if the function itself involves the exercise of discretion.*' [Citation.] Moreover, '[c]ourts have . . . [found] a mandatory duty only if the enactment "affirmatively imposes the duty and provides implementing guidelines." ' [Citation.] ' " '[T]he mandatory nature of the duty must be

phrased in explicit and forceful language.' [Citation.] 'It is not enough that some statute contains mandatory language. In order to recover plaintiffs have to show that there is some *specific* statutory mandate that was violated by the [public entity].' " ' " (*State Dept. of State Hospitals v. Superior Court*, *supra*, 61 Cal.4th at pp. 348-349; see *Srouy, supra*, 75 Cal.App.5th at pp. 559-560.)

" '[E]qually important, . . . section 815.6 requires that the mandatory duty be "designed" to protect against the particular kind of injury the plaintiff suffered. The plaintiff must show the injury is " 'one of the consequences which the [enacting body] sought to prevent through imposing the alleged mandatory duty.' " ' " (*Srouy, supra*, 75 Cal.App.5th at p. 560, quoting *Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 499 (*Haggis*).) "Finally, the breach of the duty must have been a proximate cause of the plaintiff's injury." (*Srouy*, at p. 560.)

"Whether an enactment imposes 'a mandatory duty, rather than a mere obligation to perform a discretionary function, is a question of statutory interpretation for the courts.' [Citation.] The enactment's 'language "is, of course, a most important guide in determining legislative intent, [but] there are unquestionably instances in which other factors will indicate that apparent obligatory language was not intended to foreclose a governmental entity's or officer's exercise of discretion." ' [Citation.] For example, the word 'shall' is 'mandatory' for purposes of the Welfare and Institutions Code. [Citations.] 'However, as we have emphasized, this term's inclusion in an enactment does not necessarily create a mandatory duty' within the meaning of Government Code section 815.6." (*State Dept. of State Hospitals v. Superior Court, supra*, 61 Cal.4th at p. 349.) If a plaintiff has not alleged an

10

actionable breach of a mandatory duty, the question of immunity does not arise. (*State Dept.*, at p. 348.)

Thus, in *State Dept. of State Hospitals v. Superior Court*, the California Supreme Court found a mandatory duty existed in the Sexually Violent Predators Act (SVPA) in the context of a State Department of Mental Health (DMH) evaluation made after a Department of Corrections determination that a person was likely to be a sexually violent predator. (*State Dept.*, *supra*, 61 Cal.4th at p. 350.) There, an inmate raped and murdered a victim days after he was paroled from state prison. (*Id.* at p. 343.) Before his release, his matter was referred by the Department of Corrections to DMH for an assessment of whether he should be civilly committed under the SVPA, and a single evaluator determined he was suitable for release. (*Id* at p. 346.) Accordingly, the Director of Mental Health did not request a petition for commitment. (*Id.* at p. 344.)

The California Supreme Court assessed whether the plaintiff had sufficiently alleged a breach of DMH's mandatory duty to conduct an evaluation with two evaluators, and concluded she had: "The SVPA specifies that an inmate referred by [the Department of Corrections] '*shall be evaluated* by *two* practicing psychiatrists or psychologists, or one practicing psychiatrist and one practicing psychologist, designated by the Director of Mental Health.' [Citation.] This language is clear, conferring no discretion as to the number of evaluators. [Citations.] Moreover, the use of *two* evaluators is critical to the SVPA process. A petition for commitment cannot be requested unless both evaluators agree that a person meets the criteria for [sexually violent predator] status. [Citation.] If they disagree, the Director of Mental Health must arrange for two independent evaluators to conduct a further examination. Both must concur that the inmate meets the criteria

11

before a commitment petition can be requested. [Citation.] In sum, the enactment's language, taken together with the design of the SVPA process, makes it clear that the Legislature ' "intended to foreclose . . . [the] exercise of discretion" ' with regard to how many evaluators must be designated to assess persons referred by [the Department of Corrections]." (*State Dept. of State Hospitals v. Superior Court*, *supra*, 61 Cal.4th at p. 350.)

The court further held there was no dispute that the harm to the public caused by a sexually violent predator's release was the kind of risk the SVPA was designed to forestall. (*State Dept. of State Hospitals v. Superior Court*, *supra*, 61 Cal.4th at p. 351.) "The particular mandatory duty at issue here requires the designation of two evaluators. This element of redundancy built into the review process serves the interest of the inmate as well as the governmental interest in protecting public safety. However, the potential dual benefit does not defeat plaintiff's showing. We have recognized that public safety is a particularly powerful purpose of the SVPA evaluation process. [Citations.] It is clear that the requirement of two evaluators was designed, in part, to guard against the risk that [a sexually violent predator] might be released." (*Id*. at pp. 351-352.)

The court, however, rejected the proposition that the complaint also stated a mandatory duty by alleging DMH was obliged to conduct in-person examinations of all referred inmates. (*State Dept. of State Hospitals v. Superior Court, supra*, 61 Cal.4th at p. 351.) It explained: "The SVPA states that after an inmate is referred for a full evaluation, DMH '*shall evaluate* the person in accordance with a standardized assessment protocol' including specific risk factors. [Citation.] However, nowhere does the statute impose a *specific* requirement for in-person examination of referred inmates. . . . [A] mandatory duty must be based on an enactment phrased in explicit and

12

forceful language. [Citation.] Noncodified details of the [sexually violent predator] evaluation protocol are left to DMH's judgment and discretion. [Citation.] Without any specific statutory command, DMH is not subject to a mandatory duty to conduct in-person evaluations of all referred inmates." (*Ibid*., fns. omitted.)

The court in *State Dept.* pointed to *Creason v. Department of Health Services* (1998) 18 Cal.4th 623 as an illustration of a statutory scheme that required a public agency's exercise of judgment, not giving rise to a mandatory duty. (*State Dept. of State Hospitals v. Superior Court*, *supra*, 61 Cal.4th at p. 349.) The relevant statute in *Creason* required the Department of Health Services to establish a genetic disease unit to promote a testing program in accordance with " 'accepted medical practices' " with procedures that are " 'accurate, provide maximum information, and . . . produce results that are subject to minimum misinterpretation.' " (*Creason*, 18 Cal.4th at p. 632.) *Creason* held such "general and broad" guiding principles that were "subject to considerable interpretation," did not create a mandatory duty. (*Id*. at pp. 634-635.) The court in *State Dept.* relied on *Creason* and other cases to emphasize that "[a] mandatory duty is created only when an enactment requires an act that is clearly defined and not left to the public entity's discretion or judgment. [Citation.] Such an act is mandated only to the extent of the enactment's precise formulation. When the enactment leaves implementation to an exercise of discretion, 'lend[ing] itself to a normative or qualitative debate over whether [the duty] was adequately fulfilled,' an alleged failure in implementation will not give rise to liability." (*State Dept.*, at p. 350; see also *de Villers v. County of San Diego* (2007) 156 Cal.App.4th 238, 260.)

13

This court addressed section 815.6 in the context of a claim that the Department of Corporations (the Department) should be held liable for investment losses suffered by investors who had purchased fraudulent securities from brokers subject to Department "desist and refrain orders" after the Department rescinded those orders. (*Department of Corporations v. Superior Court* (2007) 153 Cal.App.4th 916, 921.) On a demurrer, the trial court ruled that Corporations Code section 25612 required the Department to make certain findings before rescinding an order. (*Id.* at p. 924.) The Department filed a writ petition, and this court granted the writ. (*Id.* at p. 936.) We acknowledged the cited law used mandatory language directing the Department that " '[n]o . . . order may be . . . amended, or rescinded unless' the Commissioner finds the action 'necessary or appropriate.' " (*Id.* at p. 931.) But the provision was within "an overall statutory framework granting the Commissioner 'pervasively discretionary' authority to address violations of the [Corporate Securities Law]." (*Ibid.*) Further, we observed "the only thing [the law] mandates is that the Commissioner '*finds*' that his actions are 'necessary or appropriate.' [Citation.] The section does not provide any further guidance with respect to exactly what the Commissioner must do, for example, by mandating written or even express *findings*." (*Id.* at p. 932.) Because the language "fail[ed] to mandate any *specific* conduct on the part of the Commissioner" it strongly supported a conclusion the statute did not create any mandatory duty. (*Ibid.*)

Additionally, the statutory language "d[id] not dictate any particular result, or even provide a standard by which action taken by the Commissioner can be objectively measured, but rather 'explicitly call[s] upon the judgment, expertise and discretion of the' Commissioner to define what action, if any, is 'necessary or appropriate . . . .' " (*Department of*

14

*Corporations v. Superior Court*, *supra*, 153 Cal.App.4th at p. 933.) This likewise indicated there was no mandatory duty. (*Ibid*.)

San Mateo Union High School Dist. v. County of San Mateo, *supra*, 213 Cal.App.4th 418 is also instructive. There, plaintiff school districts sued the county after investments in a county-operated pooled retirement fund lost money when Lehman Brothers Holdings, Inc. went bankrupt. (*Id*. at p. 424.) The plaintiffs alleged, inter alia, statutory violations of prudent investor standards set forth in sections 27000.3 and 53600.3. (*Ibid*.) On appeal from a judgment following the county's successful demurrer, the Court of Appeal affirmed: "The basic compulsory obligation imposed on the county treasurer by sections 27000.3 and 53600.3 to act as a prudent investor, while stated in mandatory language, is quite general. The statutes do not command specific acts designed to achieve compliance with the prudent investor standard. [Citation.] The manner in which the required standard of the prudent investor is to be attained entails the exercise of extensive discretion that is not in the least specified by the statutes or any accompanying implementing measures." (*Id*. at pp. 429-430.) The statutes did not articulate standards appropriate to consider in prudently investing and managing assets (*id*. at p. 430. fn. 5), and granted comprehensive discretion to evaluate and decide how best to comply with the command to act as a prudent investor. (*Id*. at p. 431.) The appellate court observed: "The issue of defendants' compliance with the prudent investor standard would also necessitate a complex qualitative analysis, rather than merely a straightforward determination that a specific ministerial directive has been ignored or violated." (*Id*. at p. 430.)

The *San Mateo* court held the defendants were immune: "This is not a case in which the plaintiff seeks to impose liability for clear breach of a mandatory ministerial or regulatory directive that leaves no choice other

15

than to execute the enacted requirement. [Citations.] . . . The prudent investor standards set forth in sections 27000.3 and 53600.3 fall squarely within the scope of enactments that set forth the general policy goals—acting with the care, skill, prudence, and diligence under the prevailing circumstances in the investment or management of funds deposited with the county treasury—but do not specifically direct the manner in which the goals will be performed." (*San Mateo Union High School Dist. v. County of San Mateo*, *supra*, 213 Cal.App.4th at pp. 431-432.)

With this overview, we turn to each of the provisions plaintiffs cite to ascertain whether they create mandatory duties designed to protect against the kind of financial and emotional injury they allege they suffered here, requiring the court to grant them leave to amend to allege such duties. As we explain, the cited provisions manifestly do not support any claim for breach of a mandatory duty.

B. *Probate Code Section 16002*

Probate Code section 16002, part of the Probate Code's trust law, provides: "The trustee has a duty to administer the trust solely in the interest of the beneficiaries." (Prob. Code, § 16002, subd. (a).)[4] Added in 1986, Probate Code section 16002 "restate[d] the general duty of loyalty expressed in former Civil Code sections 2228 (trustee to act in 'highest good faith'), 2229 (not to use property for trustee's profit), 2231 (influence not to be used for trustee's advantage), 2232 (trustee not to undertake adverse trust), 2233 (trustee to disclose adverse interest), 2235 (transactions between

---

[4] The remainder of the section governs a trustee who "administers two trusts to sell, exchange or participate in the sale or exchange of trust property between the trusts . . . ." (Prob. Code, § 16002, subd. (b).) Plaintiffs do not make any argument concerning this subdivision, which on its face is not applicable to these circumstances.

16

trustee and beneficiary presumed under undue influence), and 2263 (trustee cannot enforce claim against trust purchased after becoming trustee)." (18 Cal. Law Revision Com. Rep. (1986) pp. 1369-1370.)

Plaintiffs contend this section requires SDCERS and its agents "to make complete disclosure to its trust fund beneficiaries, particularly when they ask SDCERS questions." They maintain this proposition—that SDCERS had the duty of "full disclosure"—is established by *Hittle*, *supra*, 39 Cal.3d 374.

The contentions lack merit. It is true that the SDCERS board is a fiduciary "charged with administering the City's pension fund" in ways this court described in *Krolikowski v. San Diego City Employees' Retirement System* (2018) 24 Cal.App.5th 537 (*Krolikowski*), including to determine member eligibility for benefits. (*Id*. at p. 544, fn. 1.) Assuming arguendo SDCERS is also a trustee governed by Probate Code section 16002 with an obligation of loyalty to beneficiaries, the statute does not set out the sort of mandatory duty sufficient to impose liability on SDCERS. There is no "explicit" or "particular action" specified in Probate Code section 16002, nor do plaintiffs point to any "implementing guidelines" that would give rise to a mandatory duty under section 815.6. (*State Dept. of State Hospitals v. Superior Court*, *supra*, 61 Cal.4th at pp. 348-349; *Srouy*, *supra*, 75 Cal.App.5th at pp. 559-560.) The general expression of duty to act in the beneficiaries' best interests does not describe any "*specific* conduct" (*Department of Corporations v. Superior Court*, *supra*, 153 Cal.App.4th at p. 932) nor does it "dictate any particular result, or even provide a standard by which action taken by [SDCERS] can be objectively measured . . . ." (*Id*. at p. 933.) The statute's general description of a trustee's duty leaves it to the trustee to decide what is or what is not in the beneficiaries' best interests.

17

The statute is far from the sort of enactment sufficient to impose a mandatory duty on SDCERS or Claussen designed to protect against the type of injuries allegedly suffered by plaintiffs.

Our conclusion does not change in view of *Hittle, supra,* 39 Cal.3d 374. As plaintiffs point out, *Hittle* establishes that " '[pension] plans create a trust relationship between pensioner beneficiaries and the trustees of pension funds who administer retirement benefits . . . and the trustees must exercise their *fiduciary trust* in good faith and must deal fairly with the pensioners-beneficiaries.' " (*Id.* at p. 392.) *Hittle* held the officers of the public pension plan there were voluntary trustees " 'bound to act in the highest good faith toward [their beneficiaries], and may not obtain any advantage therein over the latter by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind.' " (*Id.* at p. 393, quoting former Civ. Code, § 2228.) The administrator of a pension plan should "exercise[ ] toward the pensioner a fiduciary duty of good faith and fair dealing." (*Id.* at p. 393.) But *Hittle* does not present a question of whether the retirement association in that case owed the plaintiff a mandatory duty under section 815.6. The California Supreme Court held a pensioner did not waive his right to apply for disability retirement (*id.* at p. 389); the retirement association did not fulfill its fiduciary duty to deal fairly and in good faith with him, and so the court reversed a trial court finding on a petition for writ of mandate that the association had put the pensioner on "specific notice" of his right to apply for disability retirement upon termination of his employment. (*Id.* at pp. 391-392.) A case is not authority for propositions not considered or issues not presented by its own particular facts. (*Satten v. Webb* (2002) 99 Cal.App.4th 365, 383, citing *Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2.)

Plaintiffs' reliance on *Hittle* suffers from another fatal problem: *Hittle* itself is not an "enactment" as defined by the law that must be the source of any mandatory duty. (See § 810.6;[5] *State Dept. of State Hospitals v. Superior Court*, *supra*, 61 Cal.4th at pp. 348, 350 [mandatory duty is created only by an enactment having certain dictates].) Plaintiffs acknowledge the definition, but argue "according to binding Supreme Court precedent [*Haggis*, *supra*, 22 Cal.4th 490], the enactment itself does not need to specifically state that it creates a private right of action." This does not address whether case law is an enactment on which plaintiffs can rely to create a mandatory duty. In short, we disagree the Legislature's imposition of a duty of loyalty on a trustee in Probate Code section 16002 gives rise to a mandatory duty on SDCERS to provide accurate advice, much less accurate advice to a beneficiary regarding the state of his disability pension upon a job change.

C. *Article XVI, Section 17 of the California Constitution*

Plaintiffs next contend article XVI, section 17 of the California Constitution "mandates that SDCERS owes fiduciary duties to [them]." They cite to the following provisions:

"Notwithstanding any other provisions of law or this Constitution to the contrary, the retirement board of a public pension or retirement system shall have plenary authority and fiduciary responsibility for investment of moneys and administration of the system, subject to all of the following:

---

5  As used in section 815.6, an "enactment" is "a constitutional provision, statute, charter provision, ordinance or regulation." (§ 810.6; *Department of Corporations v. Superior Court*, *supra*, 153 Cal.App.4th at p. 926, fn. 3.) " 'This definition is intended to refer to all measures of a formal legislative or quasi-legislative nature.' " (*Department of Corporations,* at p. 926, fn. 3, quoting *County of Los Angeles v. Superior Court* (2002) 102 Cal.App.4th 627, 638.)

"(a) The retirement board of a public pension or retirement system shall have the sole and exclusive fiduciary responsibility over the assets of the public pension or retirement system. The retirement board shall also have sole and exclusive responsibility to administer the system in a manner that will assure prompt delivery of benefits and related services to the participants and their beneficiaries. The assets of a public pension or retirement system are trust funds and shall be held for the exclusive purposes of providing benefits to participants in the pension or retirement system and their beneficiaries and defraying reasonable expenses of administering the system.

"(b) The members of the retirement board of a public pension or retirement system shall discharge their duties with respect to the system solely in the interest of, and for the exclusive purposes of providing benefits to, participants and their beneficiaries, minimizing employer contributions thereto, and defraying reasonable expenses of administering the system. A retirement board's duty to its participants and their beneficiaries shall take precedence over any other duty.

"(c) The members of the retirement board of a public pension or retirement system shall discharge their duties with respect to the system with care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with these matters would use in the conduct of an enterprise of like character and with like aims."

Plaintiffs also cite this court's statement in *Krolikowski, supra,* 24 Cal.App.5th 537 that this constitutional article "establishes that members of a public pension board, such as the SDCERS Board members, are fiduciaries; that they must exercise their fiduciary duties with the purpose, among

20

others, of providing benefits to participants and their beneficiaries; and that the Board Members' duty to pension plan participants and beneficiaries takes precedence over any other duty." (*Id.* at p. 553.)[6] They make no other argument beyond these quotes, nor do they explain how article XVI, section 17 sets out the necessary explicit and forceful language (*State Dept. of State Hospitals v. Superior Court*, *supra*, 61 Cal.4th at pp. 348-349), "rigidly delineated" (*Williams v. Horvath*, *supra*, 16 Cal.3d at p. 838) requirements, or

---

[6]     *Krolikowski* did not involve a claim of section 815.6 mandatory duty. Underlying that case was SDCERS's decision and effort to recoup pension overpayments made to the plaintiffs. (*Krolikowski*, *supra*, 24 Cal.App.5th at p. 543.) We held that the plaintiffs' claim for breach of fiduciary duty against SDCERS based on an alleged " 'refusal to follow California law regarding the statute of limitations and exempting pensions from levy or attachment' " (*id.* at p. 551) was premised on SDCERS's discretionary decisionmaking, and thus subject to discretionary act immunity under section 820.2. (*Id.* at pp. 550-551.) We rejected the plaintiffs' argument that because their claim arose under article XVI, section 17 of the California Constitution, section 815.2 immunity did not bar their cause of action: "The doctrine of constitutional supremacy does not apply here because appellants have not identified any *conflict* between the constitutional provisions and the Government Claims Act immunity provisions. As we have explained, the constitutional provisions we have cited above merely establish that public pension board members have certain fiduciary duties to participants and beneficiaries, but those provisions do not address whether beneficiaries and participants have the right to recover monetary damages from pension board members who breach those duties. Therefore, no constitutional provision is trumped when Government Claims Act immunity is applied to bar liability for monetary damages based on the SDCERS Board members' alleged breach of fiduciary duty." (*Id.* at pp. 553-554.) We held our conclusion was consistent with *Nasrawi v. Buck Consultants LLC* (2004) 231 Cal.App.4th 328, which held Government Claims Act immunity applied to a breach of fiduciary claim even based on the constitutional provision because immunity was a separate question from whether the provision imposed fiduciary duties, and plaintiffs did not identify authority that public employees were liable for injuries caused by discretionary acts that violated constitutionally imposed duties. (*Krolikowski*, at p. 556.)

21

specific conduct with implementing guidelines, that would meet the above-summarized standards to create a mandatory duty.

The California Constitution's broadly-worded duties on retirement boards to administer pension systems to assure prompt delivery of services and benefits, or to discharge duties solely in the beneficiaries' interests and with care, skill, prudence and diligence, are not specific commands to engage in *particular* advice or disclosures of the sort on which plaintiffs base their claim. (See *State Dept. of State Hospitals v. Superior Court*, *supra*, 61 Cal.4th at pp. 348-349; *de Villers v. County of San Diego*, *supra*, 156 Cal.App.4th at p. 260.) It is not enough that the provisions contain mandatory language; an enactment will not suffice if it does not dictate a particular result, or requires a qualitative debate over whether the obligations were fulfilled. (*de Villers*, at p. 260 ["the Legislature's use of mandatory language (while necessary) is not the dispositive criteria. Instead, the courts have focused on the particular action required by the statute, and have found the enactment created a mandatory duty under section 815.6 only where the statutorily commanded act did not lend itself to a normative or qualitative debate over whether it was adequately fulfilled"].) For the same reasons expressed above with the Probate Code duty of loyalty, the constitutional provisions do not create a mandatory duty.

D. *Civil Code Sections 1709 and 1710*

Plaintiffs contend Civil Code sections 1709 and 1710 impose a duty on SDCERS to make "full disclosure" because Claussen spoke to them in 2013 about Conway's pension. They cite case law for the propositions that even without a duty to disclose, when a person speaks, he or she must "speak the whole truth and not conceal facts that materially qualify those stated" or must be truthful when asked for or volunteering information.

22

Civil Code section 1709 provides: "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." The portion of Civil Code section 1710 cited by plaintiffs provides: "A deceit, within the meaning of the last section, is [ ]: The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact[.]" (Civ. Code, § 1710, subd. (3).)

The general duties expressed in these fraud statutes manifestly do not create a mandatory duty on SDCERS as required for public entity liability. They do not purport to apply to SDCERS in particular or public entities in general, and as with the other provisions discussed above, they do not set out precisely formulated, explicit duties that leave no room for a public entities' discretion or judgment. (*State Dept. of State Hospitals v. Superior Court*, *supra*, 61 Cal.4th at p. 351.)

Because none of the foregoing provisions suffice to create mandatory duties on SDCERS, we need not address plaintiffs' contentions as to the other elements, i.e., the legislative purposes behind the provisions or issues of probable cause.

III. *Plaintiffs Do Not State an Actual Fraud, Corruption or Actual Malice Claim Against Claussen*

Plaintiffs contend the operative complaint pleads facts showing that Claussen's conduct was "actual fraud, corruption or actual malice," sufficient

to overcome any statutory immunity provided in section 822.2.[7]  They argue they pleaded facts that were found lacking in *Masters*, *supra*, 32 Cal.App.4th 30 when they alleged Claussen "intentionally concealed" evidence and did so willfully, consciously, and maliciously.  They argue that even if these allegations are insufficient to support fraud, corruption or actual malice, they should be given at least one opportunity to plead more specific facts.

"[S]ection[ ] . . . 822.2 provide[s] public employees with immunity from liability for misrepresentations unless the employees are guilty of actual fraud, corruption, or malice.  [Citation.]  . . .  Section 822.2 provides:  'A public employee acting in the scope of his employment is not liable for an injury caused by his misrepresentation, whether or not such misrepresentation be negligent or intentional, unless he is guilty of actual fraud, corruption or actual malice.'  [¶]  'The purpose of . . . section[ ] . . . 822.2 is to immunize public . . . employees "from liability for misrepresentation or deceit, a 'tort distinct from the general milieu of negligent and intentional wrongs, [and which] applies to interferences with financial or commercial interest.'  . . ." ' "  (*County of San Bernardino v. Superior Court* (2022) 77 Cal.App.5th 1100, 1112.)

" ' "[T]he immunity afforded by . . . section 822.2 applies unless, in addition to the essentials of common law deceit, a public employee is motivated by corruption or actual malice, i.e., a conscious intent to deceive, vex, annoy or harm the injured party[ ]" [citation] with respect to [his or] her

---

[7]     Plaintiffs dropped their fraud claims against SDCERS and Claussen, for which SDCERS and Claussen are expressly immune under sections 818.8 and 822.2.  Nor can they state such a claim against SDCERS, whose immunity is "absolute."  (*Masters*, *supra*, 32 Cal.App.4th at pp. 42-43.)  Section 818.8 provides:  "A public entity is not liable for an injury caused by misrepresentation by an employee of the public entity, whether or not such misrepresentation be negligent or intentional."

24

financial dealings.' [Citation.] [¶] . . .[C]onclusory allegations of corruption or malice [are not] sufficient to bring a fraud action within the exception of . . . section 822.2. In addition to facts establishing the ordinary elements of common law deceit, the pleader also must allege *facts* showing that the fraud was motivated by corruption or actual malice." (*Curcini v. County of Alameda* (2008) 164 Cal.App.4th 629, 649.)

Plaintiffs allege: "In late September or early October 2013, while in San Diego for [Conway's] medical appointments, [plaintiffs] met with Ms. Claussen of SDCERS to inquire whether Conway's acceptance of a position as a detention deputy in Idaho would jeopardize his disability pension. [¶] . . . Ms. Claussen told [plaintiffs] that [Conway's] proposed position as a detention deputy was similar to a corrections deputy in the San Diego County Jail system run by the San Diego County Sheriff. Further[,] Claussen stated that since the San Diego Police Department did not staff jails, there was no comparable position with the San Diego Police Department, so that his disability pension would not be jeopardized by his taking the detention deputy position in Idaho because the San Diego Police Department had no comparable position. [¶] [Plaintiffs] asked Claussen four times to place her assurances (that taking the detention deputy job would not jeopardize . . . Conway's disability retirement) in writing. Claussen would not do so, stating 'we don't do that, but you have nothing to worry about.' "

Plaintiffs further allege: "Conway would not have pursued and taken the detention deputy position . . . had Claussen told [plaintiffs] that taking that position would jeopardize his SDCERS' disability retirement. [¶] As a result of Claussen's statements to [plaintiffs], . . . Conway took the detention deputy position. [¶] In 2018 and 2019, despite Claussen's 2013 assurances that Conway accepting the detention deputy position would not jeopardize his

25

disability retirement, she intentionally concealed her statements to [plaintiffs] from SDCERS. [Plaintiffs] did not discover Claussen's concealment, nor could they have reasonably done so, until they deposed Claussen on June 4, 2019. [¶] As a result, SDCERS sought to have Conway's disability retirement taken away because it was unaware of Claussen's statements to [plaintiffs] in 2013." They allege "Claussen's concealment and suppression, in 2018 and 2019, from the SDCERS' board what she had told [plaintiffs] in 2013 was a substantial factor in causing harm to [plaintiffs]."

Plaintiffs end with conclusory and unspecific assertions as to Claussen's assertedly malicious or corrupt conduct: "The conduct of Claussen as described herein was despicable and was carried on by her with wilful [*sic*] and conscious disregard for [plaintiffs'] rights and Claussen's fiduciary duty to them. Claussen was aware of the probable dangerous consequences of her conduct and wilfully [*sic*] and deliberately failed to avoid those consequences. This conduct constitutes malice, oppression and fraud such that [plaintiffs] are entitled pursuant to California Civil Code section 3294 to recover punitive damages in an amount sufficient to punish and set an example of these defendants."

Such general allegations do not avoid section 822.2 immunity. In *Curcini*, the court held allegations that "representations, false promises and concealments were done 'for corrupt purposes and/or with malice towards plaintiffs and their interests' and that defendants' conduct 'was intended . . . to cause injury to plaintiffs or constituted despicable conduct which was carried on by defendants, and each of them, with a willful and conscious disregard of the rights of plaintiffs' " were insufficient to survive a demurrer. (*Curcini v. County of Alameda, supra,* 164 Cal.App.4th at p. 650.) We reject plaintiffs' claim that an assertion that Claussen "intentionally concealed" her

26

statements from SDCERS overcomes section 822.2 immunity as evidenced by *Masters*, *supra*, 32 Cal.App.4th 30. *Masters* makes clear that the term actual fraud in section 822.2 is not coextensive with tort fraud or deceit, as such interpretation would render the statute unintelligible. (*Masters*, at p. 42.) There must be specific facts showing motivation by a " ' "conscious intent to deceive, vex, annoy or harm the injured party" [citation] with respect to her financial dealings.' " (*Ibid*.)

The complaint here contains no *facts* showing Claussen's conduct in allegedly incorrectly advising Conway about the consequence of taking the new position on his disability retirement was somehow motivated by corruption or actual malice. *Masters* does not hold that a bare allegation of intentional concealment fills that void.[8] And because this was plaintiffs' second effort to state a cause of action (having chosen to file a first amended pleading in response to SDCERS and Claussen's first demurrer), we perceive no error in the court denying leave to amend. Plaintiffs in any event have not stated on appeal how their pleading can be amended to allege more specific facts demonstrating corruption or actual malice on Claussen's part. Although as stated they may try to make this showing for the first time here, "it is

---

[8] *Masters* held an allegation that a pension administrator " 'caused to be withheld' " medical reports from a medical advisor did not state a cause of action for breach of fiduciary duty, and was vague and uncertain as to whether it alleged intentional, bad faith conduct. (*Masters*, *supra*, 32 Cal.App.4th at pp. 48-49 & fn. 12.) Reciting examples (*id*. at p. 48, fn. 13), the court held the trial court erred by finding discretionary immunity applied to the administrator's "lower-level, operational" decisions about how to handle paperwork including an applicant's medical evidence. (*Ibid*.) *Masters* did not involve a question of immunity under section 822.2: "Inexplicably, neither the parties nor the court below referred to or considered the express immunity for misrepresentation as to public employees (. . . § 822.2) or as to public entities (. . . § 818.8)." (*Id*. at p. 39, fn. 4.)

their burden to 'show in what manner [they] can amend [their] complaint and how that amendment will change the legal effect of [their] pleading.' " (*640 Tenth, LP v. Newsom*, *supra*, 78 Cal.App.5th at p. 865.) Simply asking for the opportunity to amend is insufficient. (See *ibid*.) We conclude the demurrer was properly sustained without leave to amend.

## IV. *Section 821.6*

Section 821.6 provides: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." This court has explained that " 'California courts construe section 821.6 broadly in furtherance of its purpose to protect public employees in the performance of their prosecutorial duties from the threat of harassment through civil suits.' " (*Doe v. State of California* (2017) 8 Cal.App.5th 832, 843-844.) "Courts have long held that acts undertaken in the course of an investigation or in preparation for instituting a judicial proceeding cannot give rise to liability, even if no proceeding is ultimately instituted." (*Id*. at p. 844.) This court has also held that immunity under section 821.6 extends to intentional tortious conduct. (*Ibid*.)

On the other hand, we have held that "merely being a witness in a criminal prosecution and giving information in response to a request by law enforcement in an ongoing criminal proceeding, without more, does not give rise to a claim for malicious prosecution . . . ." (*Zucchet v. Galardi* (2014) 229 Cal.App.4th 1466, 1485.) Absent allegations that a witness "insisted upon or urged further prosecution of [a] case, or gave advice to the prosecutors or placed pressure on the government to continue the case" that witness, even if he or she gives valuable testimony, does not transform the witness into an active participant. (*Ibid*.)

Plaintiffs contend the trial court erred by applying section 821.6 and extending its immunity to Claussen, who they assert "had nothing to do with SDCERS's administrative process" as she "neither investigated it, or participated in it (except as witness [*sic*] called by [plaintiffs] regarding Claussen's 2013 statements to them)." They maintain the court interpreted the statute too broadly, and assert as an example that liability may be imposed for false arrest or imprisonment, but not for investigating or bringing charges leading to the imprisonment.

Here, the trial court found the gravamen of the first amended complaint was malicious prosecution: that SDCERS had wrongfully commenced an administrative proceeding against Conway as a result of Claussen's concealment.[9] But plaintiffs' allegations that Claussen was an SDCERS medical review officer who caused them financial and emotional damage from having to undergo an administrative proceeding, in our view, brings Claussen's actions within the scope of section 821.6 immunity. The trial court took judicial notice of SDCERS's board rules, including Rule 8.10, which defines a medical review officer as a person with the responsibility, inter alia, to review personnel records and other relevant information, "*and based upon that analysis, to prepare Disability Committee and Board recommendations to terminate a Disability Retiree's benefit*." (Italics added.) Plaintiffs' allegations, combined with this judicially-noticed information, demonstrate that Claussen's input was an "integral part of the . . . [administrative] process" (*Kayfetz v. State of California* (1984) 156

---

9    The California Supreme Court has granted review on the question of whether immunity under section 821.6 is limited to actions for malicious prosecution. (See *Silva v. Langford, supra,* 79 Cal.App.5th at p. 719, fn. 7; citing *Leon v. County of Riverside* (2021) 64 Cal.App.5th 837, 841, review granted Aug. 18, 2021, S269672.)

Cal.App.3d 491, 496-498) and its institution, and that SDCERS considered her advice in bringing the administrative action. (Accord, *Zucchet v. Galardi, supra*, 229 Cal.App.4th at p. 1485.)

Thus, we conclude the court correctly applied section 821.6 immunity to Claussen, and SDCERS under section 815.2, which extends an employee's immunity to the public entity: " 'Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability.' " (*Silva v. Langford, supra*, 79 Cal.App.5th at p. 720, see also *id*. at p. 721 [citing cases in which appellate courts have applied section 821.6 to public entities through application of section 815.2].) Having concluded plaintiffs cannot state causes of action against SDCERS or Claussen and the court properly sustained the demurrer without leave to amend, we need not reach plaintiffs' arguments concerning the timeliness of their government claim.

## DISPOSITION

The judgment is affirmed.


O'ROURKE, Acting P. J.

WE CONCUR:


DATO, J.


DO, J.